## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PILKINGTON NORTH AMERICA, INC. | CASE NO. 1:18-cv-08152-JFK |
| Plaintiff, | |
| v. | |
| MITSUI SUMITOMO INSURANCE COMPANY OF AMERICA and AON RISK SERVICES CENTRAL, INC. | |
| Defendants. | |

## PILKINGTON NORTH AMERICA, INC.'S MEMORANDUM IN OPPOSITION TO MITSUI SUMITOMO INSURANCE COMPANY OF AMERICA'S MOTION TO DISMISS

COVINGTON & BURLING LLP

Seth A. Tucker
Bethany Theriot
Rachel Snidow
850 Tenth Street N.W.
Washington, D.C. 20001
(202) 662-6000

The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1000

*Counsel for Pilkington North America, Inc.*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF RELEVANT FACTS .............................................................................. 2

ARGUMENT .......................................................................................................................... 6

I.      The Applicable Legal Standard ............................................................................. 6

II.     MSI's Arguments for Dismissal of Reformation are Without Merit. ................... 7

        A.      MSI's Argument that Mutual Mistake is Precluded by Pilkington's
                Allegations Rests on a Misreading of the Complaint. ............................. 7

        B.      MSI's Focus on Aon as the Defrauded Party and Its Attempt to Draw a
                Strict Demarcation Between the Preceding Policy and the Renewal Policy
                Miss the Mark. ......................................................................................... 9

                1.      Pilkington, Not Aon, is the Allegedly Defrauded Party. ............. 9

                2.      Reforming a Renewal Policy Based on a Preceding Policy is
                        Neither New Nor Inequitable. ................................................... 12

                3.      MSI's Remaining Arguments Against Reformation Similarly Fail. ........ 15

                        a)      *MSI Cannot Induce Reliance on Its Own
                                Misrepresentations and Then Argue That It Had No Duty
                                To Correct That Reliance.* ........................................... 15

                        b)      *MSI Fails to Offer Any Arguments As to Why Pilkington's
                                Reliance Was Not Reasonable.* ...................................... 17

                        c)      *MSI Cites No Authority Suggesting That a Routine Policy
                                Renewal Breaks a Causal Chain.* ................................... 19

                        d)      *The Facts Alleged "Give Rise to a Strong Inference of
                                Fraudulent Intent."* ....................................................... 20

III.    MSI's Wrongful Reduction of Pilkington's Coverage Deprived Pilkington of the
        Benefit of Pilkington's Bargain, and Thereby Breached the Covenant of Good
        Faith and Fair Dealing. ....................................................................................... 21

IV.     MSI is Wrong that a Claim for Breach of Contract Cannot Be Brought
        Simultaneously with a Claim for Policy Reformation. ........................................ 23

V.      Dismissal of Pilkington's Request for Declaratory Relief is Unwarranted. ....... 24

CONCLUSION ...................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albany City Sav. Inst. v. Burdick,*
    87 N.Y. 40 (1881) ..................................................................................................19

*Am. Bldg. Supply Corp. v. Petrocelli Grp., Inc.,*
    979 N.E.2d 1181 (N.Y. 2012) ................................................................................17

*Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce,*
    205 A.D.2d 513 (N.Y. App. Div. 1999) ............................................................21, 22

*Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of N.Y.,*
    886 N.E.2d 127 (N.Y. 2008) ................................................................................23

*Brass v. Am. Film Techs., Inc.,*
    987 F.2d 142 (2d Cir. 1993) ................................................................................16

*Bristol-Myers Squibb Co. v. SR Int'l Bus. Ins. Co.,*
    354 F. Supp. 2d 499 (S.D.N.Y. 2005) ..................................................................24

*Butvin v. DoubleClick, Inc.,*
    No. 99 civ. 4727, 2000 WL 827673 (S.D.N.Y. June 26, 2000) ..........................6, 18

*In re Carter-Wallace, Inc., Sec. Litig.,*
    220 F.3d 36 (2d Cir. 2000) ..................................................................................20

*Coe v. London & Lancashire Fire Ins. Co.,*
    184 A.D. 604 (N.Y. App. Div. 1918) ....................................................................12

*Columbia Cas. Co. v. Neighborhood Risk Mgmt. Corp.,*
    No. 14-cv-48, 2016 WL 4467548 (S.D.N.Y. Aug. 22, 2016)................................11

*Corrigan v. Bobbs-Merrill Co.,*
    126 N.E. 260 (N.Y. 1920)....................................................................................11

*Court Tobacco Stores, Inc. v. Great E. Ins. Co.,*
    43 A.D.2d 561, 349 N.Y.S.2d 8 (1973) ...............................................................19

*CPC Int'l Inc. v. McKesson Corp.,*
    514 N.E.2d 116 (N.Y. 1987)..................................................................................9

*People ex rel. Daily Credit Serv. Corp. v. May,*
    162 A.D. 215 (N.Y. App. Div.), *aff'd*, 106 N.E. 1039 (1914)................................21

*DDJ Mgmt., LLC v. Rhone Grp. L.L.C.*,
    931 N.E.2d 87 (N.Y. 2010) .......................................................................................17

*Dickerson v. Thompson*,
    88 A.D.3d 121 (N.Y. App. Div. 2011) .......................................................................1

*Doody v. Liberty Mut. Grp., Inc.*,
    137 A.D.3d 959 (N.Y. App. Div. 2016) ....................................................................21

*Dow Jones & Co. v. Harrods, Ltd.*,
    237 F. Supp. 2d 394 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 357 (2d Cir. 2003) ............24

*Easton v. Sundram*,
    947 F.2d 1011 (2d Cir. 1991)......................................................................................6

*Eaton, Cole & Burnham Co. v. Avery*,
    83 N.Y. 31 (N.Y. 1880) ............................................................................................10

*Essex Ins. Co. v. Vickers*,
    959 N.Y.S.2d 525 (App. Div. 2013) .........................................................................14

*Fagan v. U.S. Carpet Installation, Inc.*,
    770 F. Supp. 2d 490 (E.D.N.Y. 2011) ........................................................................9

*Hay v. Star Fire Ins. Cos.*,
    77 N.Y. 235 (1879) ...................................................................................................12

*Janes v. N.Y. Cent. Mut. Ins. Co.*,
    722 N.Y.S.2d 669 (App. Div. 2001) .........................................................................14

*Kaminsky v. Kahn*,
    23 A.D.2d 231 (1965) .................................................................................................1

*Katsam Holdings LLC v. 419 W. 55th St. Corp.*,
    58 A.D.3d 444 (N.Y. App. Div. 2009) ......................................................................8

*Kershaw v. Nautica S.A. Ltd.*,
    885 F. Supp. 617 (S.D.N.Y. 1995) .............................................................................9

*L. Lewitt & Co., Inc. v. Jewelers' Safety Fund Soc'y*,
    164 N.E. 29 (N.Y. 1928)................................................................................12, 13, 19

*LG Capital Funding, LLC v. Aim Expl., Inc.*,
    No. 17 Civ. 3118, 2018 WL 4119149 (S.D.N.Y. Aug. 29, 2018) .............................6

*Litvinov v. Hodson*,
    74 A.D.3d 1884 (N.Y. App. Div. 2010) ...................................................................10

*Livecche v. Cty. of Cattagraugus,*
   101 F.3d 682 (2d Cir. 1996) (unpublished) ............................................6

*Maher v. Hibernia Ins. Co.,*
   67 N.Y. 283 (1876) ............................................................23

*Metro. Life Ins. Co. v. Tannenbaum,*
   156 Misc. 221 (N.Y. App. Div. 1935) ..........................................17

*Municipality of Bremanger v. Citigroup Glob. Mkts. Inc.,*
   No. 09 Civ. 7058, 2013 WL 1294615 (S.D.N.Y. Mar. 28, 2013) ....................10

*Oakley v. Boorman & Johnston,*
   1839 WL 3398 (N.Y. Sup. Ct. 1839) ..........................................21

*Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am.,*
   51 F. Supp. 3d 379, 395 (S.D.N.Y. 2014) ...............................17-18

*Pasternack v. Lab. Corp. of Am. Holdings,*
   27 N.Y.3d 817 (2016) ........................................................10

*Phila. Indem. Ins. Co. v. Horowitz, Greener & Stengel LLP,*
   379 F. Supp. 2d 442 (S.D.N.Y. 2005) ........................................11

*Ribacoff v. Chubb Grp. of Ins. Cos.,*
   2 A.D.3d 153 (N.Y. App. Div. 2003) ............................... 11, 12-13

*In re Sept. 11th Liab. Ins. Coverage Cases,*
   458 F. Supp. 2d 104 (S.D.N.Y. 2006) ........................................11

*Spanierman Gallery Profit Sharing Plan v. Arnold,*
   No. 95 Civ. 4468, 1997 WL 139522 (S.D.N.Y. Mar. 27, 1997) ....................22

*In re Take-Two Interactive Sec. Litig.,*
   551 F. Supp. 2d 247 (S.D.N.Y. 2008) ........................................18

*Tesla Wall Sys., LLC v. Related Cos., L.P.,*
   No. 17-cv-5966, 2018 WL 4360777 (S.D.N.Y. Aug. 14, 2018) ....................10

*Travelers Indem. Co. of Ill. v. CDL Hotels USA, Inc.,*
   322 F. Supp. 2d 482 (S.D.N.Y. 2004) ...........................7, 13, 18, 20

*Village on Canon v. Bankers Trust Co.,*
   920 F. Supp. 520 (S.D.N.Y. 1996) ..........................................22

*Villager Pond, Inc. v. Town of Darien,*
   56 F.3d 375 (2d Cir. 1995) ..................................................6

*Weiss v. Hager*,
    151 A.D.3d 906 (N.Y. App. Div. 2017) .................................................................19

**Statutes**

N.Y. Ins. Law § 3426 ................................................................................. 13-14

**Rules**

Fed. R. Civ. P. 8 ...............................................................................................8

Fed. R. Civ. P. 12 ......................................................................................6, 12

Fed. R. Civ. P. 13 ...........................................................................................11

Fed. R. Evid. 201 ...........................................................................................18

**Other Authorities**

16 N.Y. Jur. 2d Cancellation of Instruments § 95 ........................................24

55 N.Y. Jur. 2d Equity § 62 ...........................................................................9

68A N.Y. Jur. 2d Insurance § 947 .................................................................13

Restatement (Second) of Contracts § 205 (1981) ........................................22

**PRELIMINARY STATEMENT**

During the eight-month period leading up to January 2016, Defendant Mitsui Sumitomo

Insurance Company of America ("MSI") proposed and insisted upon an endorsement amending

Plaintiff Pilkington North America, Inc.'s ("Pilkington's") commercial property policy.  During

that time, as alleged in Pilkington's Complaint, MSI repeatedly mischaracterized the scope and

effect of the endorsement, both through affirmative misrepresentations and misrepresentations of

omission.  In January 2016, Pilkington agreed to MSI's endorsement, expressly based on MSI's

fabrications, not knowing that the endorsement severely diminished the policy's coverage for

damage caused by unnamed windstorms.  Just over a year later, Pilkington's glass production

factory in Ottawa, Illinois, was devastated by an unnamed tornado.  For the past sixteen months,

MSI has relied on the reduction in coverage accomplished by the endorsement that was procured

through MSI's misrepresentations to deny Pilkington full coverage for the damage caused by the

tornado.  Having been rebuffed by MSI, Pilkington has now petitioned this Court for relief.

As the Complaint makes clear, MSI's deceptive behavior caused the revised language to

be introduced into Pilkington's insurance program through the endorsement.  Had MSI engaged

in this same misconduct during the policy renewal process in or around March 2016, reformation

clearly would be a proper remedy under New York law.  MSI offers ill-informed and incomplete

arguments and asks this Court to hold that the fact that MSI misrepresented the scope of its

proposed changes *in the months before* the renewal, rather than at the time of renewal, means

that there is no legal path to holding MSI to account for its misconduct.  But the Court's "power

of equity is as broad as equity and justice require."  *Dickerson v. Thompson*, 88 A.D.3d 121, 123

(N.Y. App. Div. 2011) (quoting *Kaminsky v. Kahn*, 23 A.D.2d 231, 237 (1965)).  And renewal

policies presumptively are issued on the same terms as expiring policies, meaning a routine

1

policy renewal cannot have broken the causal chain of MSI's misconduct, as MSI repeatedly suggests.

In other words, the revised language was introduced into Pilkington's insurance program by means of misrepresentations by MSI; the fact that the language was replicated in the following policy does not wipe clean that stain. Rather, under these unusual circumstances, a remedy for the damage caused during the period of the renewal policy is needed to make Pilkington whole and to prevent MSI from benefitting from its misconduct.

## STATEMENT OF RELEVANT FACTS

Pilkington brought this case to resolve insurance coverage for devastating property-damage and business-interruption loss caused by a tornado that struck Pilkington's Ottawa, Illinois factory on or around February 28, 2017. Compl. ¶¶ 31-32, ECF No. 1. As described in the Complaint, at the time of the tornado, and for at least about seven years prior, Pilkington was insured by MSI commercial property and business interruption policy number PKG3125760 (the "Policy").[1] Compl. ¶¶ 13-14. Despite the Policy's $319,382,700 limit when the tornado struck, MSI has denied coverage for any loss caused by the tornado in excess of $15 million, on the basis of a Policy sublimit for losses resulting from windstorms (the "Windstorm Sublimit"). Compl. ¶¶ 33, 37.

For the almost six years leading up to January 2016, the Windstorm Sublimit limited coverage only for loss arising from "Windstorm caused by Named Storm" (the "Original Windstorm Sublimit")—i.e., arising from a windstorm caused by a storm that has been "declared as a hurricane, typhoon, tropical storm or cyclone by" weather organizations like those identified

---

[1] While MSI re-issued the Policy for each annual period, the Complaint "refers to the [renewals] as a single 'Policy,'" MSI's Mem. 6, because the annual renewals all bear the same policy number. *See* Compl. ¶ 13; *compare* Compl. Ex. 5 at 2 *with id.* Ex. 7 at 2.

in the Policy.  Compl. ¶¶ 39, 41.  If the Original Windstorm Sublimit had still been in effect

when the tornado hit Pilkington's Ottawa factory, Pilkington indisputably would be covered for

the full amount of its loss, currently estimated as $60 to $100 million.  *See* Compl. ¶ 43.

Near the end of the 2015–2016 policy period, however, relying on the advice of its

broker, Defendant Aon Risk Services Central, Inc. ("Aon"), Pilkington agreed to an

Endorsement proposed and repeatedly mischaracterized by MSI that, unbeknownst to Pilkington,

revised the Windstorm Sublimit.  Compl. ¶¶ 44, 81, Ex. 6.  The Endorsement expanded the scope

of the sublimit, limiting the coverage available to Pilkington for damage arising out of any "U.S.

Windstorm" (the "Revised Windstorm Sublimit"), rather than just for damage arising from

Windstorm caused by Named Storm.  Compl. ¶ 46.  In spite of the fact that Pilkington's Policy

premium was not reduced or reimbursed as a result of the Endorsement, MSI has relied on this

Endorsement to deny Pilkington full coverage for the loss caused by the tornado.  Compl. ¶¶ 37,

51, 64.  MSI has done so notwithstanding that MSI itself authored and proposed the

Endorsement, and then repeatedly misrepresented the Endorsement as *not* materially revising any

of the Policy sublimits.  *See* Compl. ¶¶ 44, 52-65, 70, 90-91; O'Donnell Decl. Exs. D-G.

Specifically, the Complaint details at least four known occasions on which MSI

misrepresented the scope of the changes made by its Endorsement:

*First*, when MSI first proposed revisions to the Policy to Aon, on June 2, 2015, MSI

described its proposed revisions as altering the value of some of the Policy's limit/sublimits to

address "figures [that] were incorrect" due to "redundancy" and "the exchange rate."  Compl. ¶

53; *see also* O'Donnell Decl. Ex. D.  MSI assured Aon that the proposed changes "will not affect

too much on client [i.e., Pilkington], except the overall limit has increased by $62.2 million."

Compl. ¶ 53; *see also* O'Donnell Decl. Ex. D.  MSI directed Aon to "[p]lease discuss with client

3

if we can re-issue the policy with those changes." O'Donnell Decl. Ex. D.  MSI thus affirmatively misrepresented the scope of the changes it proposed from the beginning.

*Second*, five months later—having not approached Aon about the revisions at all in the interim—MSI e-mailed Aon on November 24, 2015, attaching a spreadsheet described by MSI as "the comparison of major items," which identified material changes proposed by the Endorsement but failed to reference the windstorm sublimit.  Compl. ¶¶ 56-59; O'Donnell Decl. Ex. E.  MSI also attached the proposed revised Policy Declarations (the "Endorsement") to its e-mail.  Compl. ¶¶ 56-59; O'Donnell Decl. Ex. E.  MSI had highlighted all of the valuations in the Endorsement and failed to note any changes to the language of the Windstorm Sublimit, thereby indicating that only the valuations were the subject of the proposed changes.  *See* Compl. ¶¶ 56-59; O'Donnell Decl. Ex. E.  On this occasion, again, MSI affirmatively misrepresented the scope of the proposed changes, both by representing that "the comparison of major items" described all proposed material revisions and by highlighting only the valuations on the proposed Endorsement, without indicating the change to the language of the Windstorm Sublimit.  And, again, MSI directed Aon to "please use the attached materials to propose the policy changes" and to "[p]lease start negotiating with client at the earliest."  O'Donnell Decl. Ex. E; *see also* Compl. ¶ 60.

*Third*, on or around January 17 or 18, 2016, when conferring about the proposed Endorsement over the phone, MSI failed to correct Aon's expressed, and mistaken, understanding that the Revised Windstorm Sublimit would apply only to High Hazard Wind Zones and Moderate Hazard Wind Zones (as defined in the Policy).  Compl. ¶ 69.

*Fourth*, on January 19, 2016, when transmitting Pilkington's authorization to execute the Endorsement, Aon expressly notified MSI that Pilkington's consent to the Endorsement was

based on "the comparison of major items"—which did not indicate any change to the Windstorm Sublimit—and MSI's "assurance no other terms and conditions other than valuation were included in the endorsement."  Compl. ¶ 65; O'Donnell Decl. Ex. G.  Aon re-attached the attachments that had been provided with MSI's November 24, 2015, e-mail, making clear that it was those representations on which Aon and Pilkington were relying.  *See* O'Donnell Decl. Ex. G.  MSI was silent in response, misrepresenting by omission.

Less than three months after Pilkington consented to the Endorsement, without consulting with Pilkington, Aon copied the Endorsement into Pilkington's property submission for the routine renewal of the Policy for the 2016–2017 period.  Compl. ¶¶ 48, 82-85.  MSI should have studied the exhibits to its own motion more carefully before characterizing as "ludicrous" the Complaint's description of Aon having simply copied the Endorsement into the property submission.  MSI's Mem. 3.  As MSI's exhibits show, the property submission prepared by Aon for the 2016–2017 policy period features the same policy term (April 1, 2015 to April 1, 2016), annual premium ($2,215,418.00), and currency conversion rates as MSI's Endorsement, making clear that Aon did, in fact, simply copy the Endorsement into the property submission.  *Compare* O'Donnell Decl. Ex. F (MSI's Endorsement) *with id.* Ex. H at 2 (property submission).  In contrast, the Policy as actually issued by MSI contains a different policy term (April 1, 2016 to April 1, 2017), premium ($2,224,754.00), and currency conversion rates from that in Pilkington's property submission, *see id.* Ex. C at Ex. 7, p. 1-2, contradicting MSI's assertion that MSI merely relied on Pilkington's property submission to issue "the 2016 Policy with the exact terms and conditions Aon-US requested," MSI's Mem. 9.

The Complaint thus properly alleges that the Revised Windstorm Sublimit was copied into Pilkington's 2016–2017 Policy (the "Renewal Policy") as a result of its having been

wrongfully incorporated into the 2015–2016 Policy (the "Preceding Policy") through the Endorsement, without any change in Pilkington's intentions with respect to the Windstorm Sublimit.  Just over a year later, Pilkington's Ottawa factory was devastated by the tornado, and this coverage dispute arose shortly thereafter.

## ARGUMENT

When considered as a whole, with all reasonable inferences drawn in Pilkington's favor, the Complaint asserts plausible bases for relief for all of Pilkington's claims against MSI: reformation (whether for mutual mistake or fraud); breach of the duty of good faith and fair dealing; breach of contract; and declaratory judgment.  MSI's arguments to the contrary are ill-informed and/or incomplete.  The Court should deny MSI's motion in its entirety and allow the case to proceed.

## I.      The Applicable Legal Standard

Defendants seeking dismissal under Rule 12(b)(6) for failure to state a claim face a high bar.  As a starting point, "the Court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff.  *LG Capital Funding, LLC v. Aim Expl., Inc.,* No. 17 Civ. 3118, 2018 WL 4119149, at *3 (S.D.N.Y. Aug. 29, 2018). Having done so, dismissal is warranted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Livecche v. Cty. of Cattaraugus*, 101 F.3d 682 (2d Cir. 1996) (unpublished) (quoting *Easton v. Sundram*, 947 F.2d 1011, 1015 (2d Cir. 1991)).  In other words, "[t]he issue on a motion to dismiss 'is not whether . . . plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  *Butvin v. DoubleClick, Inc.*, No. 99 civ. 4727, 2000 WL 827673, at *5 (S.D.N.Y. June 26, 2000) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).

When tested against this exacting standard, MSI's motion fails in its entirety.

## II.   MSI's Arguments for Dismissal of Reformation are Without Merit.

Reformation is the appropriate remedy where, as here, "a writing does not set forth the actual agreement of the parties," due either to mutual mistake or unilateral mistake coupled with fraud. *Travelers Indem. Co. of Ill. v. CDL Hotels USA, Inc.*, 322 F. Supp. 2d 482, 495 (S.D.N.Y. 2004). Pilkington's Complaint properly states a claim for relief under both reformation theories. MSI's arguments that MSI (a) was not mistaken and (b) did not defraud Pilkington rest on misconstructions of the Complaint and sleight of hand.[2]

### A.   MSI's Argument that Mutual Mistake is Precluded by Pilkington's Allegations Rests on a Misreading of the Complaint.

MSI's argument that Pilkington's claim for reformation due to mutual mistake should be dismissed hinges on MSI apparently having misread Pilkington's Complaint as alleging that MSI "'knew' that coverage for all windstorm losses *falling under the revised sublimit* would be limited to $15 million," leading MSI to erroneously conclude that the Complaint "directly contradict[s]" Pilkington's claim of mutual mistake. MSI's Mem. 12 (citing Compl. ¶ 89) (emphasis added). MSI's reading is incorrect, and the case law cited by MSI therefore is inapposite. The paragraph cited by MSI says nothing about the Revised Windstorm Sublimit. It alleges only that MSI knew both that the limit of the Preceding Policy was $313 million and that coverage for losses falling under the Windstorm Sublimit, generally, was drastically reduced to only $15 million. *See* Compl. ¶ 89. The Complaint then describes the myriad ways in which MSI misrepresented the Endorsement as having no impact on the scope of the Windstorm

---

[2] Having made no arguments to the contrary, MSI concedes that the Complaint properly alleges that Pilkington was mistaken when it agreed to the Endorsement with the understanding that the Endorsement did not alter the scope of the Windstorm Sublimit.

Sublimit, in spite of MSI's knowledge of the drastic impact that increasing the scope of the Windstorm Sublimit would have on coverage for captured risks. *See* Compl. ¶¶ 90-93; *see also id.* ¶¶ 52-70.

MSI's repeated failures to accurately describe the revisions contained in its own Endorsement lead to two possible inferences: either (1) MSI failed to disclose the revision because MSI did not intend for the Endorsement to revise the scope of the Windstorm Sublimit (i.e., the revision was inserted by mistake), or (2) MSI knowingly misled Pilkington about the scope of the Endorsement.[3]  In either event, reformation is appropriate. *See, e.g.*, *Katsam Holdings LLC v. 419 W. 55th St. Corp.*, 58 A.D.3d 444, 445 (N.Y. App. Div. 2009) (affirming reformation of a lease where the parties inadvertently used a residential, instead of a commercial, lease form). Pilkington is not required to choose one inference over the other at this preliminary stage. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

Even if MSI's misreading *were* correct—and it is not—pleading inconsistencies do not necessitate dismissal.[4]  *See* Fed. R. Civ. P. 8(d)(2) ("If a party makes alternative statements, the

---

[3] Although MSI in June 2015 sent Aon an email attachment indicating that, at that time, it may have intended to propose a revision to the Windstorm Sublimit, the text of MSI's email did not disclose that revision, and MSI never again referenced that email or its attachment, which had been sent nearly six months before MSI proposed the Endorsement that became part of the Policy. *See* Compl. ¶¶ 52-53, 56-57, 63-64. These allegations, too, plausibly indicate either that MSI did not actually intend to include the revision to Windstorm Sublimit in the Endorsement, or that MSI intended the revision and purposely misrepresented the proposed changes in order to defraud Pilkington.

[4] Furthermore, MSI's assertion that this cause of action is founded on mere legal conclusions, MSI's Mem. 12, is absurd on its face, given the Complaint's at-least fourteen pages of factual allegations setting forth known events that transpired. Many of the allegations detail specific communications between MSI, Aon, and/or Pilkington, including the very communications attached by MSI in support of its motion. *See* Compl. ¶¶ 12-99; *compare* Compl. ¶¶ 52-65 *with* O'Donnell Decl. Exs. D-H.

pleading is sufficient if any one of them is sufficient."); *Fagan v. U.S. Carpet Installation, Inc.*, 770 F. Supp. 2d 490, 496 (E.D.N.Y. 2011) ("[A] party pleading in the alternative does not have [sic] separately identify the statements as alternative theories in separate counts or factual allegations."). MSI's motion to dismiss this claim fails.

> **B.  MSI's Focus on Aon as the Defrauded Party and Its Attempt to Draw a Strict Demarcation Between the Preceding Policy and the Renewal Policy Miss the Mark.**

As is recognized in the case law cited by MSI for the reformation standard, a party pleading fraud need only "allege that 'defendant knowingly uttered a falsehood intending to deprive the plaintiff of a benefit and that the plaintiff was thereby deceived and damaged.'" *Kershaw v. Nautica S.A. Ltd.*, 885 F. Supp. 617, 620 (S.D.N.Y. 1995) (quoting *CPC Int'l Inc. v. McKesson Corp.*, 514 N.E.2d 116, 124 (N.Y. 1987)); *see* MSI's Mem. 13 (citing *Kershaw*); *see also* 55 N.Y. Jur. 2d Equity § 62 ("Fraud in equity has a much broader connotation than at law and includes acts inconsistent with fair dealing and good conscience that result in a benefit conferred upon the one holding a dominant position."). MSI predominantly relies on smoke and mirrors to argue that Pilkington's 34-page Complaint fails to plead facts supporting any of the four elements of fraud. Specifically, MSI's efforts to (1) portray Aon, rather than Pilkington, as the allegedly defrauded party, and (2) hermetically seal the Renewal Policy from the Preceding Policy, have no basis in the pleaded facts, law, or equity. MSI's remaining arguments similarly lack substance.

> **1.  Pilkington, Not Aon, is the Allegedly Defrauded Party.**

Much of MSI's argument with respect to fraud rests on the fundamental misconception that Pilkington's reformation claim hinges solely on Aon's conduct because Pilkington "could not have directly relied on any statements or omissions that MSI[] purportedly made regarding the policy revisions." MSI's Mem. 16-17. This is legally and factually incorrect. Under New

York law, "[i]t is not essential that a representation should be addressed directly to the party who seeks a remedy for having been deceived and defrauded by means thereof." *Eaton, Cole & Burnham Co. v. Avery*, 83 N.Y. 31, 33–34 (N.Y. 1880); *Litvinov v. Hodson*, 74 A.D.3d 1884, 1885 (N.Y. App. Div. 2010) (quoting *Eaton*).[5]

In *Litvinov*, the Appellate Division found that false statements made by an insurer's investigator to an intermediary (the claimant's employer) for the purpose of inducing the claimant's reliance supported rescission of an agreement between the insurer and claimant. 74 A.D.3d at 1885-86.  This was so regardless of the fact that the intermediary "was not an actual agent of [insurer] or [claimant]." *Id.* at 1886.

Similarly, here, MSI was seeking Pilkington's, not Aon's, consent to the Endorsement. MSI misrepresented to Aon, an "intermediary," MSI's Mem. 5; Compl. ¶ 20, that the Endorsement altered only valuations, with the intent of inducing Pilkington's reliance.  *See* O'Donnell Decl. Ex. D (directing Aon to "[p]lease discuss with client [i.e., Pilkington] if we can re-issue the policy with those changes"); *id.* Ex. E (directing Aon to "please use the attached materials to propose the policy changes as of 4/1/2015," and to "start negotiating with client [i.e., Pilkington] at the earliest").  Aon relayed at least some of MSI's misrepresentations to

---

[5] Though MSI fails to address this principle, *see* MSI's Mem. 13-14, 16-17, it is recognized in the case law cited by MSI, *see Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 828 (2016) (recognizing a long line of case law "stand[ing] for the proposition that indirect communication can establish a fraud claim, so long as the statement was made with the intent that it be communicated to the plaintiff and that the plaintiff rely on it"); *Tesla Wall Sys., LLC v. Related Cos., L.P.*, No. 17-cv-5966, 2018 WL 4360777, at *4 (S.D.N.Y. Aug. 14, 2018) (relying on *Pasternack*); *Municipality of Bremanger v. Citigroup Glob. Mkts. Inc.*, No. 09 Civ. 7058, 2013 WL 1294615, at * (S.D.N.Y. Mar. 28, 2013) ("Under New York law, a plaintiff can recover on a claim for fraud, even when he did not rely directly on a fraudulent misrepresentation made by the defendant, if (1) the plaintiff received the information from someone who had received it from the defendant, and (2) the defendant intended the misrepresentation to be conveyed to him.") (quotations omitted); MSI's Mem. 17 (citing *Pasternack*, *Tesla*, and *Municipality of Bremanger*).

Pilkington, and Pilkington relied on them when agreeing to the Endorsement. Compl. ¶¶ 65, 77,

81; *see also* O'Donnell Decl. Exs. D-E. Because MSI intended for its misrepresentations to

induce Pilkington's reliance, and because they actually did so, it matters not whether they were

made directly to Pilkington in the first instance. Pilkington properly has alleged that MSI

defrauded Pilkington. Whether or not MSI's misconduct additionally defrauded Aon is beside

the point.[6]

Furthermore, MSI's recurring argument that Pilkington's Complaint should be dismissed

due to Aon's misconduct overplays MSI's hand. MSI's remedy for any contributory misconduct

by Aon lies in a cross-claim against Aon, not a motion to dismiss. *See, e.g.*, Fed. R. Civ. P. 13(g)

("The crossclaim may include a claim that the coparty is or may be liable to the cross-claimant

for all or part of a claim asserted in the action against the cross-claimant."). And MSI's assertion

---

[6] MSI is likewise off base when arguing that Aon's knowledge must be imputed to Pilkington and that this somehow negates Pilkington's claim against MSI. *First*, all of the case law cited by MSI to support this argument arose on summary judgment or after trial, not on a motion to dismiss, indicating that agency is not grounds for dismissal. *Second*, the case law cited by MSI analyzes circumstances in which the *policyholder* engaged with the broker to accomplish the policyholder's ends, not circumstances like those here, in which the *insurer* instructed the broker to misrepresent the insurer's own proposed policy revision to the policyholder. *See Phila. Indem. Ins. Co. v. Horowitz, Greener & Stengel LLP*, 379 F. Supp. 2d 442, 457 (S.D.N.Y. 2005) (broker typically is not insurer's agent when policyholder gives broker notice of a claim); *In re Sept. 11th Liab. Ins. Coverage Cases*, 458 F. Supp. 2d 104, 117-18 (S.D.N.Y. 2006) (broker is policyholder's agent when procuring coverage requested by policyholder); *Columbia Cas. Co. v. Neighborhood Risk Mgmt. Corp.*, No. 14-cv-48, 2016 WL 4467548, at *5 (S.D.N.Y. Aug. 22, 2016) (same); *Ribacoff v. Chubb Grp. of Ins. Co.*, 2 A.D.3d 153, 154 (N.Y. App. Div. 2003) (same). *Third*, even if Aon were acting as Pilkington's agent for purposes of MSI's Endorsement—which Pilkington does not concede—MSI's apparent conclusions that Aon's expertise and/or Aon's own independently formed interpretations of MSI's Endorsement are imputed to Pilkington do not follow. *See, e.g., Corrigan v. Bobbs-Merrill Co.*, 126 N.E. 260 (N.Y. 1920) ("While a corporation knows a fact only as its officers and agents know it, it does not know all that its agents know, but only what comes to them while acting for the corporation within the scope of their agency, when it is their duty to report their knowledge to the general officers or agents of the company, and it may be presumed that they have told the principal what they know."). *Last*, the Complaint alleges that Aon itself misunderstood the scope of the Endorsement as a result of MSI's misrepresentations, so imputing Aon's understanding of the Endorsement to Pilkington is of no help to MSI.

that "[i]t is simply unfathomable that Aon[] ignored its own contractual obligations to

Pilkington[] and reasonably relied upon MSI[]'s June 2015 email," MSI's Mem. 3, is an

argument for a jury, not a basis for dismissal of a well-pleaded complaint under Rule 12(b)(6).

**2.    Reforming a Renewal Policy Based on a Preceding Policy is Neither New Nor Inequitable.**

As another endeavor to construct barriers to Pilkington's claim where none exist, MSI

essentially argues that none of MSI's misrepresentations with respect to the Endorsement matter

because "[a]n alleged misrepresentation made with respect to one contract cannot provide the

basis for reforming an entirely separate agreement between the parties." MSI's Mem. 14.  MSI

cites no support for this argument, and the argument is contrary to New York law.

New York courts have long recognized that endorsements inserted into predecessor

policies provide grounds for reforming renewal or replacement policies.  In *Hay v. Star Fire

Insurance Cos.*, for example, the Court of Appeals reformed a renewal policy to excise a clause

that the insurer had inserted into a preceding policy without the policyholder's consent,

regardless of the policy having been "renewed several times" since the clause's insertion.  77

N.Y. 235, 238-39 (1879).  In *L. Lewitt & Co., Inc. v. Jewelers' Safety Fund Society*, the Court of

Appeals reformed a renewal policy to include a rider attached to the preceding policy just prior

to renewal, despite the fact that the policyholder's renewal application did not request the

coverage extended by the rider.  164 N.E. 29, 30-31 (N.Y. 1928).  In *Coe v. London &

Lancashire Fire Insurance Co.*, the First Department reformed a replacement policy to expunge

a provision that had been expunged from the preceding policy, regardless of the fact that the

previously expunged provision was mistakenly inserted into the replacement policy slip by the

policyholder's agent.  *See* 184 A.D. 604 (N.Y. App. Div. 1918).  And in *Ribacoff v. Chubb

Group of Insurance Companies*—cited in MSI's own brief at page 6—the First Department

reformed a renewal policy to exclude a specific risk where, years earlier, the policyholders had

cancelled their coverage for that risk, and where the preceding year's policy had been amended

specifically to continue the practice of excluding that risk.  2 A.D.3d 153, 154 (N.Y. App. Div.

2003).

　　　Reforming a renewal policy as a result of revisions made during prior policy periods is

thus neither new nor unequitable.  In fact, it makes perfect sense given that the touchstone of

reformation is the intent of the contracting parties, *see Travelers*, 322 F. Supp. 2d at 495

(reformation applies "where a writing does not set forth the actual agreement of the parties"), and

that a routine policy renewal does not alter the intent of the parties with respect to coverage, *see*

*L. Lewitt & Co.*, 164 N.E. at 31 ("Clearly, a policy which renews an old policy must renew the

terms of that policy as they stood at the moment of its expiration.") (quotations omitted); 68A

N.Y. Jur. 2d Insurance § 947 ("Unless otherwise provided, the terms and conditions of [an]

existing [insurance] policy are not changed by a renewal of the policy but are merely continued

in force as binding on the parties.").

　　　The presumption of identity between preceding policies and renewals is so fundamental

that it is embodied in New York statutory law.  New York's Insurance Law requires insurers to

give clear notice to a policyholder directly (as well as to the policyholder's broker) when

proposing that a renewal policy be issued on different terms than the preceding policy.  *See* N.Y.

Ins. Law § 3426(e)(1)(C) (requiring insurers to give <u>both</u> policyholders <u>and</u> their agents or

brokers "written notice . . . indicating the insurer's intention . . . to condition its renewal upon

change of limits . . . [or] reduction of coverage").  An insurer wishing to revise a policy at

renewal is required to provide detailed notice of the proposed changes to the policyholder,

including, among other things: (1) "the specific reason or reasons for . . . conditional renewal"

and (2) a description "in plain and concise terms" of "the nature of . . . [the] proposed changes." *Id.* § 3426(e)(2). If the insurer fails to meet these requirements, reformation of the revised renewal policy to the prior policy's terms is appropriate. *See, e.g.*, *Essex Ins. Co. v. Vickers*, 959 N.Y.S.2d 525, 527 (App. Div. 2013) (relying on N.Y. Ins. Law § 3426(e)(5)(C)(i) to find that "[w]here an insurer fails to comply with the statute's notice requirements, coverage remains in effect 'on the same terms and conditions of the expiring policy for another required policy period'"); *Janes v. N.Y. Cent. Mut. Ins. Co.*, 722 N.Y.S.2d 669, 670 (App. Div. 2001) ("Defendant is bound by the coverage provided under the policy as originally issued because, upon renewing the policy in 1988, defendant failed to inform plaintiff of the changes in the vacancy exclusion clause that reduced coverage.").

MSI did not meet the statutory requirements for changing a renewal policy here, either at the time of renewal or when proposing the Endorsement in the months prior. Despite the fact that the Original Windstorm Sublimit had appeared in Pilkington's Policy for six years, MSI did not send Pilkington *any* notice of the changes proposed, and repeatedly misrepresented the scope of the changes proposed to Pilkington's broker, Aon. *See* Compl. ¶¶ 39, 52-65. Pilkington consented to the Endorsement under the mistaken belief that the Endorsement did not change the scope of the Windstorm Sublimit. *See* Compl. ¶ 81. Shortly thereafter, the Policy was renewed without either party proposing alterations to the then-existing Policy terms. *See* Compl. ¶¶ 47-49, 82-85, 87-88. On these facts, it is reasonable to hold MSI responsible on the same basis as if it had failed to alert Pilkington to a material policy change at the time of renewal.

If MSI had engaged in the misconduct alleged in the Complaint at the time of the 2016–2017 Policy renewal, rather than in the months before the renewal, the Renewal Policy undoubtedly would be subject to reformation under the law cited above. Yet, MSI essentially

14

asks this Court to create a loophole in New York law, whereby an insurer that would be prohibited from engaging in misconduct at the time of renewal may engage in the same misconduct *in the months before* renewal with impunity.

As is made clear in Pilkington's Complaint, the inclusion of the Revised Windstorm Sublimit in the Renewal Policy was no less the product of mistake, fraud, or bad faith on MSI's part because it was inserted into Pilkington's insurance program in the months before the renewal rather than at the time of renewal.[7]  Given that the crux of reformation is intent, and not strict adherence to contract formalities, MSI's unsupported efforts to undermine Pilkington's claim fail.

### 3.   MSI's Remaining Arguments Against Reformation Similarly Fail.

MSI's remaining arguments with respect to the elements of a claim for reformation do not pass muster.

#### a)   *MSI Cannot Induce Reliance on Its Own Misrepresentations and Then Argue That It Had No Duty To Correct That Reliance.*

MSI's only remaining argument with respect to the element of misrepresentation is that MSI had no duty to correct Aon's and Pilkington's reliance on MSI's own mischaracterizations of the Endorsement.[8]  *See* MSI's Mem. 14-15.  Pilkington has alleged that MSI affirmatively misrepresented the scope of the Endorsement in both June 2015 and November 2015, as

---

[7] MSI cites no allegation in Pilkington's Complaint indicating that the Policy was "separately negotiated . . . every year."  MSI's Mem. 6.  To the contrary, the Complaint alleges that Aon prepared a routine renewal submission replicating the terms of the Preceding Policy, as revised by the Endorsement.  Compl. ¶¶ 48, 82-84, 87-88.

[8] MSI's attempts to muddy the water by arguing that misrepresentations made to Pilkington and those made to Aon are somehow distinguishable and that misrepresentations during the Preceding Policy cannot form the basis for reformation fail for the reasons discussed above in Sections II.B.1-2.

described in the Statement of Facts, so Pilkington's claim for reformation based on fraud does not hinge on MSI's failures to correct Aon's and Pilkington's misconceptions in January 2016. Nonetheless, MSI is incorrect.

By law, a party cannot induce reliance on its own misrepresentations and then argue that it had no duty to correct that reliance.[9] *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (describing the duty to disclose in business transactions "where the party has made a partial or ambiguous statement, on the theory that once a party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth"). It does not matter whether MSI affirmatively misrepresented the scope of the Endorsement when it failed to correct Pilkington's reliance on MSI's misleading "comparison of major items" and "assurance no other terms and conditions other than valuation were included in the endorsement." Compl. ¶ 65; O'Donnell Decl. Ex. G. Because Aon and Pilkington were simply relying on MSI's own mischaracterizations of the Endorsement, MSI's failure to correct the misconceptions it caused is actionable.

MSI even goes so far as to assert that MSI "had no reason to suspect that Aon[] or Pilkington[] was 'acting on the basis of mistaken knowledge,'" because less than three months after Pilkington agreed to the Endorsement, Aon copied the Endorsement into Pilkington's property submission for the Renewal Policy. MSI's Mem. 15. This assertion is belied by the facts alleged, including specifically that Aon told MSI in writing that Aon and Pilkington were relying on MSI's representations when Pilkington agreed to the Endorsement, Compl. ¶¶ 64-65; *see also* O'Donnell Decl. Ex. G, as well as by the presumption of continuity between insurance

---

[9] Because the case law cited by MSI in support of its argument does not address this legal principle, it is inapposite.

policies discussed above in Section II.B.2.[10]   Even without this allegation, when all inferences

are drawn in Pilkington's favor, Pilkington would be entitled to assert a claim for fraud.  *See*

*Metro. Life Ins. Co. v. Tannenbaum*, 156 Misc. 221, 221 (N.Y. App. Div. 1935) ("When either

party makes an error, which the other party is bound to know, then the insistence on that

erroneous writing is fraud.").  The factual allegation regarding Aon's statement to MSI makes

MSI's protestation incomprehensible.

> b)   *MSI Fails to Offer Any Arguments As to Why Pilkington's Reliance*
> *Was Not Reasonable.*

MSI's entire argument with respect to reasonable reliance rests on its assumption that

Aon's reliance, not Pilkington's, is the proper focus of the inquiry.  For the reasons described

above in Section II.B.1, that assumption is unfounded.  MSI's argument that Pilkington cannot

state a claim for relief because it could never prove reasonable reliance therefore fails.

Moreover, "an insured should have a right to look to the expertise of its broker with

respect to insurance matters."  *Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am.*, 51 F.

Supp. 3d 379, 395 (S.D.N.Y. 2014) (quoting *Am. Bldg. Supply Corp. v. Petrocelli Grp., Inc.*, 979

N.E.2d 1181, 1185 (N.Y. 2012)).  A party that has hired a broker "has taken reasonable steps to

protect itself against deception [and] should not be denied recovery merely because hindsight

suggests that it might have been possible to detect the fraud when it occurred."  *Id.* (quoting *DDJ*

*Mgmt., LLC v. Rhone Grp. L.L.C.*, 931 N.E.2d 87, 91 (N.Y. 2010)).  In *Paraco*, for example, the

court held that the policyholder's reliance on its insurer's misrepresentation regarding coverage

was not unreasonable where the policyholder relied on its broker's "representations and diligence

---

[10] This argument also is more appropriately made to a jury than on a motion to dismiss.

in selecting a policy that met [the policyholder's] needs," and the broker failed to discover the

misrepresentation.[11] *Id.* at 396.

Similarly, here, Pilkington relied on Aon's "representations and diligence" with respect

to the Endorsement, and Aon conveyed MSI's misrepresentations as though they were accurate

statements of the changes made by the Endorsement.  Pilkington's alleged reliance on

misrepresentations conveyed by, in MSI's estimation, "one of the most sophisticated property

insurance brokers in the world," MSI's Mem. 3, was not unreasonable.[12]  That Pilkington did not

uncover MSI's misrepresentations until after it suffered the tornado loss has no bearing on

---

[11] Because none of the case law cited by MSI in support of its reasonable reliance argument analyzes the unique circumstances presented when a policyholder reasonably relies on its broker's diligence, the case law is inapposite.  Moreover, none of the case law cited by MSI for its assertion tying diligence to reasonable reliance, *see* Mem. 15-16, analyzes circumstances wherein a counter-party actively misrepresented proposed contract terms (much less revisions it proposed to existing contract terms).  *See, e.g.*, *Travelers*, 322 F. Supp. 2d at 504 (finding that though the plaintiff excess insurer's proposed changes to the primary policy were not incorporated into the primary policy, the policyholder had never agreed to seek to incorporate the proposed changes into the primary policy or to relay the proposed changes to the primary insurer); *Butvin*, 2000 WL 827673, at *9-10 (plaintiff alleged that his former employer "failed to disclose restrictions on a grant of stock options" that were incorporated by reference in his employment offer, not that his employer affirmatively misrepresented the terms of the contract).

[12] While Pilkington does not contest that Aon is "an experienced insurance broker," Compl. ¶ 95, Exhibits A and B to MSI's brief, which according to MSI are materials available on Aon's website, appear to be marketing materials that do not provide facts that are properly the subject of judicial notice. *See generally* MSI's Mem. 3 n.1, 17 n.8, O'Donnell Decl. ¶¶ 3-4, Exs. A, B; *see also* MSI's Mem. 17 n.8 (citing Exhibit A for its representation that Aon's "mini-wind product . . . 'protects from all wind damage, not just a named storm'" (emphasis omitted)); Fed. R. Evid. 201(b).  Furthermore, the exhibits are not even clearly relevant.  Exhibit A pertains to an Aon entity (Aon Private Risk Management Insurance Agency, Inc.), insurer (Lloyd's of London), and type of insurance (homeowners' insurance) that are not at issue in this case. Exhibit A does not state when or by whom it was issued, and it is unclear for what purpose and/or audience either Exhibit A or B was developed.  Thus, MSI's implicit representations that these exhibits contain "fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b)(2), is off base for purposes of this motion.  The Court is not bound to take judicial notice of any information contained in these documents, *see In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 262 n.4 (S.D.N.Y. 2008) (declining to take judicial notice of "unauthenticated and unsigned" documents found on ratings board's website that were "not themselves public documents"), and it should not do so on a motion to dismiss.

whether Pilkington's claim may proceed. *See Court Tobacco Stores, Inc. v. Great E. Ins. Co.*, 43 A.D.2d 561, 562, 349 N.Y.S.2d 8, 10 (1973) ("The retention of the policies without discovery of the error until the happening of the loss is not of itself fatal to plaintiff's cause for reformation."); *L. Lewitt & Co.*, 164 N.E. at 31 ("It has certainly never been announced as the law in this State that the mere omission to read or know the contents of a written instrument should bar any relief by way of a reformation of the instrument on account of mistake or fraud." (quoting *Albany City Sav. Inst. v. Burdick*, 87 N.Y. 40, 46 (1881))).

       c)    *MSI Cites No Authority Suggesting That a Routine Policy Renewal Breaks a Causal Chain.*

Pilkington's Complaint alleges that, but for the revision to the Windstorm Sublimit introduced into Pilkington's insurance program by means of the Endorsement, the Windstorm Sublimit would not have applied to the Claim, and Pilkington would be fully indemnified for its loss. *See* Compl. ¶¶ 39-49, 51, 88, 93. The Complaint also specifically alleges that the revision to the Windstorm Sublimit, and MSI's conduct with respect thereto, proximately caused the reduction of available coverage. *See* Compl. ¶ 93. In its motion to dismiss, MSI cites no authority for the proposition that these allegations are insufficient to plead causation. *See* MSI's Mem. 19-20. Moreover, the case law that MSI does cite makes clear that in order to be a "superseding cause" sufficient to break a causal chain, an act must be "extraordinary." *See Weiss v. Hager*, 151 A.D.3d 906, 906 (N.Y. App. Div. 2017) (on summary judgment, describing superseding cause as an "intervening act . . . 'of such an extraordinary nature or so attenuated from [defendant's] conduct that responsibility for [plaintiff's] injury should not reasonably be attributed to [defendant]'"). For the reasons discussed above in Section II.B.2, the routine renewal of an insurance policy is not a "superseding cause." At the motion-to-dismiss stage, MSI cannot be heard to argue that Pilkington has failed to plead causation.

> d)   *The Facts Alleged "Give Rise to a Strong Inference of Fraudulent Intent."*

As MSI's brief recognizes, a plaintiff pleading fraud is permitted to "allege scienter generally" and need only "allege facts that give rise to a strong inference of fraudulent intent." MSI's Mem. 20 (quoting *Travelers*, 322 F. Supp. 2d at 503). This may be accomplished either "by alleging facts to show that defendants had both motive and opportunity to commit fraud, or . . . by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Travelers*, 322 F. Supp. 2d at 503 (quoting *In re Carter-Wallace, Inc., Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000)).

Pilkington's Complaint satisfies either of these standards. As alleged in the Complaint, MSI authored and proposed the Endorsement. Compl. ¶¶ 38, 44-46, 52, 57-58. MSI then misrepresented the scope of the Endorsement, with the intention of inducing Pilkington's reliance. *See* Compl. ¶¶ 52-70, O'Donnell Decl. Exs. D-F. MSI did so despite its knowledge of the significant impact that such a revision would have on coverage. *See* Compl. ¶¶ 89-90. These allegations give rise to a strong inference that MSI knew that its representations concerning the changes made by the Endorsement were false. If anything, the fact that MSI sent the proposed revisions "***at least three separate times***," MSI's Mem. 21 (emphasis in original), supports this inference—it does not undermine it, as MSI suggests. MSI only sent the Endorsement multiple times because its first attempts to introduce the damaging language were unsuccessful; MSI affirmatively misrepresented the scope of the Endorsement in two of the three transmissions; and MSI was aware that Pilkington and Aon relied on MSI's misrepresentations due to Aon's express statement of reliance when transmitting Pilkington's acceptance. Thus, when the Court draws all reasonable inferences in Pilkington's favor, as it does upon MSI's motion to dismiss, it is clear that MSI's motion fails for this reason, too.

III.   **MSI's Wrongful Reduction of Pilkington's Coverage Deprived Pilkington of the Benefit of Pilkington's Bargain, and Thereby Breached the Covenant of Good Faith and Fair Dealing.**

The duty of good faith and fair dealing applies to all contracts in New York, including insurance policies, "encompass[ing] any promise that a reasonable promisee would understand to be included." *Doody v. Liberty Mut. Grp., Inc.*, 137 A.D.3d 959, 960 (N.Y. App. Div. 2016). "This covenant is breached when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement." *Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce*, 205 A.D.2d 513, 514 (N.Y. App. Div. 1999).  A complaint bringing a cause of action for breach of the duty of good faith and fair dealing need only "allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff." *Id.*

MSI's argument hinges on its assumption that the Endorsement, which changed the scope of the Policy's coverage for damage caused by Windstorms, has no bearing on the parties' performance under the Policy.  This assumption is belied by the facts of this case.  In the insurance context, the promised coverage *is* the insurer's performance—i.e., the promise to "guaranty against the damage or loss to result from a future event." *People ex rel. Daily Credit Serv. Corp. v. May*, 162 A.D. 215, 218–19 (N.Y. App. Div.), *aff'd*, 106 N.E. 1039 (1914).  While the policyholder's performance is complete at the time the premium is paid, the insurer's performance "is wholly executory on the part of the insurer, whose undertaking depends upon a future event." *Id.*; *see also Oakley v. Boorman & Johnston*, 1839 WL 3398 (N.Y. Sup. Ct. 1839) ("[Insurance] contracts are those by which one of the contracting parties, without contributing any thing on his part, receives something from the other, not by way of gift, but as a compensation for the risk which he runs.").  Thus, an Endorsement that reduces the scope of

coverage necessarily "prevent[s] performance of the contract or [] withhold[s] its benefits from the [policyholder]." *Aventine Inv. Mgmt., Inc.*, 205 A.D.2d at 514; *see also* Restatement (Second) of Contracts § 205 cmt. c (1981) (reciting the principle that while the duty of good faith and fair dealing does not apply to "the formation of a contract," it may apply "[i]n cases of negotiation for modification of an existing contractual relationship").[13]

Pilkington's Complaint alleges that MSI proposed and repeatedly mischaracterized an Endorsement to the Policy that severely curtailed coverage for a certain type of risk, without a corresponding reduction in premiums. *See* Compl. ¶¶ 52-70. MSI thereby sought to, and actually did, deprive Pilkington of the benefit of insurance coverage for that type of risk, for which Pilkington already had paid substantial premiums. *See* Compl. ¶ 123. Pilkington's claim thus fits squarely under the rubric of breach of the duty of good faith and fair dealing. Pilkington paid an increased, not a decreased, premium on renewal. *Compare* Compl. Ex. 5 (listing policy premium as $2,231,776.50) *with* Compl. Ex. 7 (listing policy premium as $2,242,123.00). And MSI continues to wrongfully deprive Pilkington of the benefit of Pilkington's insurance coverage by invoking the Revised Windstorm Sublimit to excuse MSI's contracted-for performance of the Policy. These allegations of the Complaint properly state a claim of breach of the duty of good

---

[13] All of the case law cited by MSI in support of its argument analyzes circumstances wherein the alleged breach of the duty of good faith and fair dealing was entirely duplicative of a breach of contract claim and/or the counter-party's behavior in no way implicated any duty in a contract in effect between the parties. *See, e.g.*, *Village on Canon v. Bankers Trust Co.*, 920 F. Supp. 520, 534-35 (1996) (finding, among other things, that an alleged failure to negotiate in good faith for a loan extension was not actionable where the parties' contract did not impose either a duty to extend a loan or negotiate an extension); *Spanierman Gallery Profit Sharing Plan v. Arnold*, No. 95 Civ. 4468, 1997 WL 139522, at *4 (S.D.N.Y. Mar. 27, 1997) (dismissing claim where alleged misconduct took place during pre-contract negotiations). Here, in contrast, MSI does not argue that Pilkington's claim is duplicative of Pilkington's breach of contract claim, and Pilkington's claim is founded on the impact that MSI's misrepresentations had on MSI's contractual duty to indemnify Pilkington for damage arising from unnamed windstorms up to the Policy limit. These facts render all of the case law cited by MSI inapposite.

faith and fair dealing that began during the Preceding Policy period and continued into the

Renewal Policy period and to this day.  Because renewal policies are presumed to have the same

terms as preceding policies (as discussed above in Section II.B.2), at the time of MSI's initial

breach, a probable result of the breach was that Pilkington might suffer a loss during the period

of the Renewal Policy that would fall within the scope of the Revised Windstorm Sublimit.

Indeed, if that circumstance were not foreseeable, there would have been no reason for MSI to

insist on the Endorsement so close to the end of the Preceding Policy period.  On these alleged

facts, Pilkington has adequately stated its cause of action.  This is so whether one characterizes

the damages sought as "general" or "consequential."[14]  *See Bi-Econ. Mkt., Inc. v. Harleysville*

*Ins. Co. of N.Y.*, 886 N.E.2d 127, 130-31 (N.Y. 2008) (defining "general damages" as "the

natural and probable consequence of the breach" and "consequential damages" as "reasonably

foreseeable damages" that "do not so directly flow from the breach") (quotations omitted).

Damages arising from MSI's denial of full coverage for Pilkington's loss under the

Renewal Policy were a natural, probable, and foreseeable result of MSI's breach.  MSI's

argument that Pilkington has not properly pled damages arising from the alleged breach therefore

fails.

### IV.    MSI is Wrong that a Claim for Breach of Contract Cannot Be Brought Simultaneously with a Claim for Policy Reformation.

MSI's assertion that a complaint cannot simultaneously plead causes of action for

reformation of a contract and breach of the reformed contract is simply wrong.  *See, e.g, Maher*

*v. Hibernia Ins. Co.*, 67 N.Y. 283, 292 (1876) ("An action may be brought for a reformation of a

---

[14] MSI fails to explain the basis for its apparent assumption that Pilkington seeks only "consequential" damages arising from MSI's breach of the duty of good faith and fair dealing. *See* MSI's Mem. 22-23.

contract, and for a recovery at the same time upon the contract when reformed."); 16 N.Y. Jur. 2d Cancellation of Instruments § 95 ("[A] court may, in the same action, reform a contract and award damages for a breach of the contract as reformed."). MSI's argument that it cannot have breached the contract because it "has fully honored its contractual obligation under the [Renewal] Policy *as it is currently drafted*," MSI's Mem. 4 (emphasis in original), cannot plausibly provide a basis for distinguishing this case from any other case seeking reformation of a contract, and MSI cites no case law in support of its argument, *see* MSI's Mem. 4, 23-24. MSI's argument fails under New York law.

## V.    Dismissal of Pilkington's Request for Declaratory Relief is Unwarranted.

Declaratory relief "permits the court in one action to define the legal relationships and adjust the attendant rights and obligations at issue between the parties so as to avoid the dispute escalating into additional wrongful conduct." *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 405 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 357 (2d Cir. 2003). This remedy may serve to "clarify[] and settl[e] the legal relations in issue" or "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Bristol-Myers Squibb Co. v. SR Int'l Bus. Ins. Co.*, 354 F. Supp. 2d 499, 506 (S.D.N.Y. 2005). Granting declaratory relief is within the Court's discretion. *See id.*

MSI argues simultaneously that Pilkington's "claim for declaratory relief is unnecessarily duplicative" of the breach of contract claim *and* that Pilkington's breach of contract claim is "contingent and anticipatory" because MSI did not breach the Policy as drafted. MSI's Mem. 24. These arguments are contradictory, and both must be rejected at the pleadings stage, given that Pilkington has adequately stated claims for both declaratory relief and breach of contract. Furthermore, for the reasons discussed above, Pilkington's claim for reformation should not be

dismissed, and accordingly MSI's argument that declaratory relief should be dismissed based on the dismissal of reformation, MSI's Mem. 24, collapses.

Pilkington's Complaint requests declaratory relief that the Revised Windstorm Sublimit will not be enforced because of "the circumstances by which it came to be in the Policy." Compl. ¶ 117. The facts that Pilkington has alleged are sufficient to justify this Court's exercise of equity to grant the relief requested. Dismissal of Pilkington's claim for declaratory relief therefore is unwarranted.

## CONCLUSION

For the foregoing reasons, Pilkington asks the Court to deny MSI's motion to dismiss in its entirety.

Dated: January 3, 2019

Respectfully submitted,

COVINGTON & BURLING LLP

By: _____

Seth A. Tucker, *pro hac pending*
Bethany Theriot, *pro hac pending*
Rachel Snidow, *pro hac pending*
850 Tenth Street, N.W.
Washington, DC 20001
(202) 662-6000

The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 841-1000

*Counsel for Pilkington North America, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of January, 2019, I caused the foregoing

Memorandum in Opposition to Mitsui Sumitomo Insurance Company of America's Motion to

Dismiss to be served upon the following counsel of record via e-mail:

> Brian E. O'Donnell
> RIKER, DANZIG, SCHERER, HYLAND & PERRETTI, LLP
> Headquarters Plaza, One Speedwell Avenue, P.O. Box 1981
> Morristown, NJ 07962
> Tel.: (973) 451-8475
> Fax: (973) 451-8699
> Email: bodonnell@riker.com
>
> *Counsel for Defendant Mitsui Sumitomo Insurance Company of America*
>
> Lauren Casazza
> KIRKLAND & ELLIS LLP
> 601 Lexington Avenue
> New York, New York 10022
> Tel.: (212) 446-4800
> Fax: (212) 446-4900
> Email: lcasazza@kirkland.com
>
> Robert B. Ellis
> Jeffery Lula
> KIRKLAND & ELLIS LLP
> 300 North LaSalle Street
> Chicago, Illinois 60654-3406
> Tel.: (312) 862-2000
> Fax: (312) 862-2200
> Email: robert.ellis@kirkland.com
> Email: jeffery.lula@kirkland.com
>
> *Counsel for Defendant Aon Risk Services Central, Inc.*

Seth A. Tucker