**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------ X
PILKINGTON NORTH AMERICA, INC.,    :
                                   :
        <u>Plaintiff</u>/              :
        <u>Counterclaim Defendant</u>, :
                                   :
    -against-                      :
                                   :   No. 18 Civ. 8152 (JFK)
MITSUI SUMITOMO INSURANCE COMPANY  :
OF AMERICA,                        :   **OPINION & ORDER**
                                   :
        <u>Defendant</u>/              :
        <u>Counterclaimant</u>,        :
                                   :
    and                            :
                                   :
AON RISK SERVICES CENTRAL, INC.,   :
                                   :
        <u>Defendant</u>.              :
                                   :
------------------------------------ X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/10/2020
```

<u>APPEARANCES</u>

FOR PLAINTIFF PILKINGTON NORTH AMERICA, INC.:
    Seth A. Tucker, Jad H. Khazem, Bethany Theriot, Bruno
    Campos, Rachel Snidow, P. Benjamin Duke, COVINGTON &
    BURLING LLP

FOR DEFENDANT MITSUI SUMITOMO INSURANCE COMPANY OF AMERICA:
    Brian E. O'Donnell, Maura C. Smith, Brooks H. Leonard,
    RIKER DANZIG SCHERER HYLAND & PERRETTI LLP

FOR DEFENDANT AON RISK SERVICES CENTRAL, INC.:
    Robert B. Ellis, Lauren Casazza, Rana B. Dawson, Michael S.
    Biehl, Kelsey E. Bleiweiss,  KIRKLAND & ELLIS LLP

**JOHN F. KEENAN, United States District Judge**:

   Before the Court is a motion by Plaintiff Pilkington North

America, Inc. ("Pilkington"), a Delaware manufacturer, to

dismiss counterclaims brought by Defendant Mitsui Sumitomo

Insurance Company of America ("MSI" or "MSI-US"), a New York

1

insurance company, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Pilkington's motion is GRANTED.

## I. Background

This action arises out of an approximately $60 to $100 million loss that Pilkington incurred when a tornado ("the Tornado") struck its glass manufacturing factory in Ottawa, Illinois on or around February 28, 2017. Pilkington seeks compensation for the loss pursuant to a commercial property and business interruption insurance policy that was issued by MSI to Pilkington's parent company, Nippon Sheet Glass Company, Ltd. ("NSG", together with Pilkington and NSG's other subsidiaries, "the NSG Group"). Pilkington alleges that MSI is liable for fraudulently revising the insurance policy such that the loss caused by the Tornado is not fully compensable. Pilkington also seeks damages against its insurance broker during the relevant time period, Defendant Aon Risk Services Central, Inc. ("Aon" or "Aon-US"), for allegedly providing faulty advice while brokering the insurance policy, which allowed MSI's fraud to succeed.

### A. Factual Overview

The Court presumes familiarity with the allegations of this case as stated in the Court's October 30, 2019, and May 18, 2020, decisions resolving MSI's and Aon's motions to dismiss Pilkington's claims against them. See Pilkington N. Am., Inc. v.

2

Mitsui Sumitomo Ins. Co. of Am., 420 F. Supp. 3d 123, 130–33 (S.D.N.Y. 2019) ("Pilkington I"); Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am., 460 F. Supp. 3d 481, 487–90 (S.D.N.Y. 2020) ("Pilkington II").

To briefly summarize, Pilkington alleges that MSI misrepresented the changes it proposed by means of a revision ("the Endorsement") to an active insurance policy MSI had issued to the NSG Group for the 2015-2016 policy period ("the U.S. Local Policy" or "the Policy"). MSI proposed the changes to Aon, who failed to notify Pilkington that, in addition to changing certain currency valuations in the Policy, the Endorsement also revised the wording of a sublimit applicable to certain types of windstorms. Aon failed to inform Pilkington that the Endorsement would substantially reduce coverage for windstorms such as the Tornado. The gravamen of Pilkington's claims center on its allegations that MSI represented to Aon that the Endorsement would only change currency valuations when in fact it also reduced the types of losses that MSI was obligated to indemnify; and on Aon's negligence in carelessly helping to trick Pilkington into agreeing to the Endorsement and incorporating the same fraudulently revised terms into the following year's insurance policy, which was in effect when the Tornado struck.

3

### B. Procedural History

Pilkington initiated this action on September 6, 2018, asserting claims against MSI for reformation of contract, breach of contract, declaratory relief regarding the enforceability of the 2016–2017 U.S. Local Policy as written, and breach of the implied duty of good faith and fair dealing; and claims against Aon for breach of contract, intentional misrepresentation, negligence, negligent misrepresentation, and breach of fiduciary duty. (ECF No. 1.) On January 24, 2019, MSI and Aon individually moved to dismiss Pilkington's complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). (ECF Nos. 23, 34.) On October 30, 2019, the Court granted in part and denied in part Aon's and MSI's motions but allowed Pilkington the opportunity to cure its defective pleading by filing an amended complaint ("the AC"). (ECF No. 64.)

On December 2, 2019, Pilkington filed the AC, which added a claim of equitable estoppel against MSI, and which MSI and Aon subsequently, and once again individually, moved to dismiss. (ECF Nos. 73, 76, 81.) On May 18, 2020, the Court denied MSI's motion to dismiss in its entirety and ordered this action to proceed to discovery.[1] (ECF No. 108.)

---

[1] The Court's May 18, 2020 decision granted Aon's motion to dismiss Pilkington's intentional misrepresentation claim against it. Aon did not seek dismissal of Pilkington's other claims.

4

### C. MSI's Answer and Counterclaims

On June 15, 2020, MSI filed an amended answer ("MSI's Answer") with affirmative defenses, counterclaims against Pilkington, and cross-claims against Aon. (ECF No. 116.) MSI's Answer denies that it owes anything to Pilkington in excess of the $15 million MSI has already paid to satisfy its coverage obligations under the 2016-2017 U.S. Local Policy. As relevant here, MSI's Answer also requests that the Court issue an order (1) declaring that coverage for losses arising from a windstorm in the United States is subject to a $15 million sublimit (the declaratory judgment counterclaim); and (2) estopping Pilkington from seeking to recover any additional amounts (the equitable estoppel counterclaim). (Am. Countercl. & Cross-Cl. ¶¶ 7, 77-90, ECF No. 116.) In support of its counterclaims, MSI alleges the following additional facts:

The U.S. Local Policy, under which Pilkington seeks compensation for the Tornado, was issued as part of a comprehensive global risk transfer program ("the Global Program") which involved (1) the NSG Group; (2) Aon's parent company, Aon UK Limited ("Aon-UK"); and (3) MSI's parent company, Mitsui Sumitomo Insurance Company Ltd. ("MSI-Japan"). (Id. ¶¶ 3-4.)

The Global Program was developed and marketed by Aon-UK, and it consists of the following interrelated contracts which

5

were designed to enable the NSG Group to save money by self-insuring many of NSG's business operations:

1) a "Master Policy" issued to NSG by MSI-Japan, which provided direct coverage in jurisdictions where MSI-Japan was authorized to transact insurance business, and supplemental coverage in jurisdictions where MSI-Japan was not authorized to transact business directly;

2) "Local Policies" issued by MSI-Japan's affiliates—such as its United States affiliate, MSI or MSI-US—where MSI-Japan was not authorized to transact insurance business directly;

3) a "Reinsurance Program" designed to indemnify MSI-Japan for certain liabilities as a result of its participation in the Global Program; and

4) a "Captive Insurance Company" that was ultimately owned and controlled by NSG and which participated in reinsuring MSI-Japan.  (Id. ¶¶ 3–4, 12–13, 39–45.)

The Global Program in effect when the Tornado struck limited to $15 million the total coverage afforded to the NSG Group for damages arising from a windstorm in the United States. (Id. ¶ 5.)  MSI alleges that the parties intended for the Master Policy to set the outer boundary of coverage available to the NSG Group under the Global Program, and for the terms and conditions of the Local Policies—such as the U.S. Local Policy at issue in this case—to mirror those of the Master Policy. (Id. ¶¶ 15–16.)  MSI further alleges that the U.S. Local Policy provides that the limits and coverages available under the Policy depend on, and may be restricted by, the limits and coverages of the Master Policy.  (Id. ¶ 19.)

6

After the discussions between MSI and Aon regarding the Endorsement in late-2015, and around the time the Endorsement was incorporated into Pilkington's 2015-2016 U.S. Local Policy, in or around January 2016, Aon-UK prepared and transmitted to MSI-Japan a market submission for the 2016-2017 Global Program. (Id. ¶ 57.) Aon-UK's submission requested a $15 million sublimit for all windstorm losses in the United States and specified that local policies should be issued with similar coverage. (Id. ¶¶ 58-59.)

As was common practice between the parties, Aon-US acted as Pilkington's agent with respect to the negotiation and placement of the U.S. Local Policy. (Id. ¶¶ 30-32.) In or around March 2016, Aon-US prepared and transmitted a market submission for the 2016-2017 U.S. Local Policy to MSI-US. (Id. ¶ 60.) In accordance with the terms negotiated and agreed to at the global level, Aon-US's submission requested a $15 million windstorm sublimit ("the Windstorm Sublimit"). (Id. ¶ 62.) MSI-US quoted the requested coverage, and Aon-US subsequently instructed MSI-US to issue the policy while noting that Aon-US had "reconciled [MSI-US's] quote with our instructions from U.K." (Id. ¶¶ 63-64.) MSI-US issued the U.S. Local Policy with the $15 million Windstorm Sublimit, which was consistent with the coverage provided under the Master Policy for windstorms in the United

7

States every year since 2009, when the MSI group of companies first participated in the Global Program. (Id. ¶¶ 65–67.)

In early-2017, the Tornado struck Pilkington's facility. (Id. ¶ 69.) MSI paid Pilkington $15 million in satisfaction of its coverage obligations under the U.S. Local Policy, after which Pilkington initiated this action to recover the balance of its losses from the Tornado. (Id. ¶¶ 75–76.)

### D. Pilkington's Motion to Dismiss

On August 28, 2020, Pilkington moved to dismiss with prejudice MSI's counterclaims for equitable estoppel and declaratory judgment. (ECF No. 136.) MSI opposed Pilkington's motion. (ECF No. 140.) Pilkington filed a reply. (ECF No. 143.) The Court heard the motion during a telephone conference on October 14, 2020, during which the Court also heard argument on issues MSI and Pilkington raised in letters each filed on October 9, 2020. (ECF Nos. 151, 152.)

## II. Legal Standard

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." S & R Dev. Estates, LLC v. Town of Greenburgh, New York, 336 F. Supp. 3d 300, 307 (S.D.N.Y. 2018) (quotation marks omitted). Accordingly, "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the [counterclaimant] is entitled to relief, in order to give the

[counterclaim] defendant fair notice of what the claim is and the grounds upon which it rests." Keiler v. Harlequin Enters. Ltd., 751 F.3d 64, 70 (2d Cir. 2014). "Consequently, to survive a motion under Rule 12(b)(6), a [counterclaim] does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." Id.

"[I]n deciding a Rule 12(b)(6) motion to dismiss a [counterclaim], [the Court] is required to accept all 'well-pleaded factual allegations' in the [counterclaim] as true." Lynch v. City of New York, 952 F.3d 67, 74–75 (2d Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). "Although allegations that are conclusory are not entitled to be assumed true, when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 75 (brackets, emphasis, and internal citations and quotation marks omitted). "The court must also 'construe all reasonable inferences that can be drawn from the [counterclaim] in the light most favorable to the [counterclaimant].'" Id. (quoting Arar v. Ashcroft, 585 F.3d 559, 567 (2d Cir. 2009) (en banc), cert. denied, 560 U.S. 978 (2010)). "The assessment of whether a [counterclaim]'s factual allegations plausibly give rise to an entitlement to relief 'does not impose a probability requirement

9

at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct." Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  "The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." Anderson News, LLC v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012), cert. denied, 568 U.S. 1087 (2013).

"Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend." Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993).  "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)." Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002).

**III.  Discussion**

MSI argues that it has fully satisfied its coverage obligations to Pilkington and asserts counterclaims for (1) equitable estoppel, which MSI argues is permitted based on Aon's allegedly false statements before MSI issued the 2016–2017 U.S. Local Policy; and (2) declaratory relief, which MSI argues is permitted because, unlike Pilkington's similar and first-filed declaratory judgment claim, MSI's seeks a declaration of the

parties' rights and obligations for windstorm losses under the Global Program, not simply the U.S. Local Policy.

Pilkington moves to dismiss both counterclaims with prejudice for failure to state a claim upon which relief may be granted on the grounds that (1) MSI has failed to plausibly allege an equitable right to relief, and even if MSI did, the doctrine of unclean hands precludes such relief by MSI; and (2) MSI's declaratory claim is redundant in light of Pilkington's claim, both of which seek an order from the Court regarding the enforceability of the Windstorm Sublimit in the 2016–2017 U.S. Local Policy.  The Court agrees with Pilkington.

### A. Equitable Estoppel

"Equitable estoppel is grounded on notions of fair dealing and good conscience and is designed to aid the law in the administration of justice where injustice would otherwise result." In re Ionosphere Clubs, Inc., 85 F.3d 992, 999 (2d Cir. 1996).  "The doctrine of equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 725 (2d Cir. 2001).

"Under New York law, the elements of equitable estoppel are with respect to the party estopped: (1) conduct which amounts to

11

a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts." In re Vebeliunas, 332 F.3d 85, 93–94 (2d Cir. 2003).  "The parties asserting estoppel must show with respect to themselves: (1) lack of knowledge and of the means of knowledge of the true facts; (2) reliance upon the conduct of the party to be estopped; and (3) prejudicial changes in their positions." Id. at 94.

MSI argues that Aon's 2016 market submission, which included the $15 million Windstorm Sublimit, and Aon's accompanying representation that it had "reconciled" the proffered policy terms with instructions from Aon-UK, constitute false statements because Pilkington now claims that it did not knowingly assent to the $15 million Windstorm Sublimit. Further, MSI argues, it is entitled to equitable relief against Pilkington because MSI justifiably relied on Aon's representations when it issued the insurance policy under which Pilkington now seeks to hold MSI liable for tens of millions of dollars.  The Court disagrees.

First, MSI's counterclaims do not allege any facts which give rise to an inference that Aon's statements were false when made.  "Falsity is a failure to be truthful—it is not a misapprehension, misunderstanding, or mistake of fact at the time a statement was made." C.D.T.S. v. UBS AG, No. 12 Civ. 4924

12

(KBF), 2013 WL 6576031, at *3 (S.D.N.Y. Dec. 13, 2013), aff'd sub nom. Westchester Teamsters Pension Fund v. UBS AG, 604 F. App'x 5 (2d Cir. 2015). Indeed, contrary to MSI's conclusory assertions, Pilkington's present claims do not make Aon's earlier statements false where, as here, Pilkington does not contest that Aon's proposal included the $15 million Windstorm Sublimit, nor that it agreed to the 2016-2017 U.S. Local Policy as written. Further, MSI's conclusory allegation regarding Aon's purportedly false "reconcil[iation]" of the proposed policy terms fails for the added reason that MSI's own allegations are that the 2016-2017 Master Policy contained an identical $15 million sublimit and the parties always intended for the terms and conditions of the Local Policies to mirror those in the Master Policy, which cuts against any inference that Aon's statement was untrue. (Am. Countercl. & Cross-Cl. ¶¶ 16, 58, 67.) Pilkington's subsequent claim that it mistakenly agreed to a significantly—and, Pilkington alleges, fraudulently— more restrictive sublimit than it originally had does not somehow make any of Aon's statements retroactively false. See, e.g., Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd., 257 F. Supp. 3d 348, 357 (S.D.N.Y. 2017) (quoting Murray v. Xerox Corp., 811 F.2d 118, 123 (2d Cir. 1987)) ("Generally, courts guard against a party's 'efforts to frame broken promises into misrepresentations of present fact.'").

13

Second, MSI fails to plausibly allege injustice or unfair prejudice. "The purpose of equitable estoppel is to prevent unconscionable injury." William Penn Life Ins. Co. of New York v. Viscuso, 663 F. Supp. 2d 353, 357 (S.D.N.Y. 2009) (citing Am. Bartenders Sch., Inc. v. 105 Madison Co., 450 N.E.2d 230, 230 (N.Y. 1983)). Here, Pilkington's case rests on MSI's alleged misrepresentations regarding the Endorsement and the harm Pilkington suffered after unknowingly accepting, at MSI's behest, a material change to its insurance policy. Accordingly, if Pilkington is successful on its claims against MSI, there will be no injustice or unfair prejudice to MSI where Pilkington is the aggrieved party entitled to relief due to MSI's wrongdoing. See id. at 360 (dismissing equitable estoppel counterclaim where "it would be inequitable to allow the [defendants to] seek to obtain the benefit of a transaction that was void ab initio").

Finally, even if MSI could plausibly allege an estoppel claim, such equitable relief would not be available to it in this case. "The doctrine of clean hands is an established and salutary tenet of equity practice based on the principle that one who seeks equity must do equity." Granite Partners, L.P. v. Bear, Stearns & Co. Inc., 17 F. Supp. 2d 275, 310 (S.D.N.Y. 1998) (brackets and internal quotation marks omitted). "[E]quitable remedies are barred by the doctrine of unclean

14

hands where the party seeking to assert them 'has committed some unconscionable act that is "directly related to the subject matter in litigation" and has injured the party attempting to invoke the doctrine.'" Hytko v. Hennessey, 62 A.D.3d 1081, 1085–86 (3d Dep't 2009) (quoting PenneCom B.V. v. Merrill Lynch & Co., Inc., 372 F.3d 488, 493 (2d Cir. 2004)). As discussed above, the purported unconscionable injury MSI seeks to prevent is Pilkington's recovery from it due to MSI's improper revisions to the windstorm sublimit. MSI counters that Pilkington may seek to hold it liable based on "an innocent, misleading statement" by MSI, which would not give rise to a sufficient finding of unclean hands. The Court is not persuaded. As noted in the Court's prior decisions, insurance contracts involve unique promises, including an element of trust from a policyholder to its insurer—here, Pilkington's trust that if it paid an agreed-upon premium to MSI every year, MSI would indemnify Pilkington for certain losses which may or may not arise. See Pilkington I, 420 F. Supp. 3d at 150; Pilkington II, 460 F. Supp. 3d at 499. MSI offers no facts to support an inference that a sophisticated insurance company such as itself, which repeatedly sought to materially change the terms of its policyholder's insurance contract, somehow innocently misled that policyholder into agreeing to something that MSI did not intend. Indeed, once again, MSI's own allegations regarding the

15

purported impact of the Master Policy on the various Local Policies fatally undermine MSI's argument.  Further, MSI offers no plausible scenario in which the doctrine of unclean hands would not apply, i.e., where Pilkington would be entitled to relief against MSI without first proving that MSI engaged in some sort of wrongdoing.  Cf. Hytko, 62 A.D.3d at 1086 ("[T]he equitable powers of the courts should not be exerted on behalf of one who has acted fraudulently or has gained an advantage by deceit.").  Accordingly, leave to amend MSI's equitable estoppel counterclaim would be futile, and it is dismissed with prejudice.

### B.  Declaratory Judgment

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  "Courts have consistently interpreted this permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." Dow Jones & Co. v. Harrods Ltd., 346 F.3d 357, 359 (2d Cir. 2003). "[T]he primary issues in assessing the appropriateness of declaratory relief are '(1) whether the judgment will serve a

16

useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty.'" Chevron Corp. v. Naranjo, 667 F.3d 232, 245 (2d Cir. 2012) (quoting Dow Jones, 346 F.3d at 359).

MSI seeks a declaration of the parties' rights and obligations under the contracts that make up the Global Program, including the U.S. Local Policy and the Master Policy, because, MSI argues, the complete series of agreements were negotiated and executed to implement a single purpose; namely, providing insurance coverage for the NSG Group as a whole.  Pilkington argues that MSI's request is redundant as MSI's counterclaim is essentially an affirmative defense which will provide MSI with no more relief than if MSI successfully defends against Pilkington's first-filed declaratory claim, which also seeks a declaration regarding the enforceability of the 2016–2017 U.S. Local Policy.  (Am. Compl. ¶¶ 127–30, ECF No. 73.)  Further, Pilkington argues, MSI is not entitled to seek standalone relief concerning the Global Program because the Master Policy expressly states that "[t]his Policy shall be governed by the Laws of England and except for [arbitration] shall be subject to the exclusive jurisdiction of the English Courts."  (Ex. A to Decl. of Seth A. Tucker, ECF No. 144-1.)

MSI's declaratory judgment claim is redundant and will be dismissed with prejudice. See Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay, 954 F. Supp. 2d 127, 138–39 (E.D.N.Y. 2013) (dismissing counterclaims with prejudice and noting that "court[s] may dismiss a defendant's counterclaim where it is merely a repackaging of its defenses and mirrors the plaintiff's claims").  Here, Pilkington's nearly identical claim already provides the vehicle for the Court to declare all relevant rights and obligations of the parties with respect to the insurance policy in effect at the time of the Tornado, including the Windstorm Sublimit that is at the center of this dispute.  Indeed, in adjudicating whether Pilkington is entitled to the declaratory relief it seeks, MSI will have a full opportunity to make any counterarguments it wants regarding the Global Program.  Accordingly, leave to amend would be futile, and the counterclaim is dismissed with prejudice.

## IV. Conclusion

For the reasons set forth above, Pilkington's motion to dismiss MSI's amended counterclaims is GRANTED.

The Clerk of Court is directed to terminate the motion docketed at ECF No. 136.

**SO ORDERED.**

Dated:   New York, New York
         November 10, 2020

_____
John F. Keenan
United States District Judge