

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PILKINGTON NORTH AMERICA, INC.,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>MITSUI SUMITOMO INSURANCE COMPANY OF AMERICA and AON RISK SERVICES CENTRAL, INC.,<br><br>　　　　　　　　　　Defendants. | Docket No. 1:18-cv-08152-JFK -KNF |

## [PROPOSED] ORDER GOVERNING DISCOVERY OF ELECTRONICALLY STORED INFORMATION (ESI)

This Order streamlines electronically stored information ("ESI") production to promote a just, speedy, and inexpensive determination of this action. This Order is binding on the parties in this action, as well as their respective attorneys, agents, representatives, officers, and employees. "Party" or "Parties" shall mean all persons or entities that are parties in this action, including any party added or joined to this action after the date of entry of this order.

The Parties have not agreed to waive any privileges or, except as specifically provided herein, to impose obligations different than those contained in Federal Rules of Civil Procedure or applicable Local Rules.

The terms of any protective order(s) entered in this matter with respect to the designation of documents or information as CONFIDENTIAL, and with respect to any produced privileged or attorney work product documents or documents protected by any other applicable immunity, shall apply to ESI to the same extent they apply to any non-ESI. Nothing in this Order shall be construed to affect the admissibility of discoverable information. Compliance with this Order does not constitute a waiver, by any Party, of any objection to the production of particular ESI on any

ground permitted under the Federal Rules of Civil Procedure. And nothing in this Order shall relieve a Party of its duty to search for responsive information in locations known by the Party to contain such information.

**I. General Provisions**

*Schedule of Exchange.*

The Parties agree to meet and confer in good faith to establish a schedule for exchanging lists of custodians and search terms.

*De-Duplication and De-NIST.*

Each Party shall be permitted to use electronic horizontal de-duplication software to eliminate multiple copies of identical documents (including emails). "Identical documents" shall mean any two or more documents with bit-for-bit identity of the document content with the exact hash value matches; so-called "near duplicates" are not included within this definition. Each Party shall supply any unique metadata for documents that are eliminated through deduplication in the form of an additional metadata field. For example, Parties shall supply Duplicate Custodian and Duplicate File Path metadata values to indicate each custodian and each location where a document was collected.

Each Party shall also use De-NIST software to remove non-user created files according to industry standards.

*Treatment of Attachments.*

The Parties shall produce email attachments sequentially after the parent email so as to preserve associations between attachments and parent documents and the email family.

The Parties agree that they will produce documents as full families--i.e., the parent document and all attachments must be produced if any family member is responsive. The Parties

agree, however, that logos and signature blocks that are extracted as separate files do not need to be produced. Nor is it necessary to extract and produce embedded elements of documents that are wholly captured by the imaging and production of the parent document. For example, if a PowerPoint presentation contains a table, it is not necessary to produce an extracted version of that table if the entire contents of the extracted file are captured in the imaged PowerPoint.

*Password Protection.*

In the event any native document produced is password-protected or otherwise restricted from access, the producing Party shall make all reasonable efforts to provide the password or other information needed to access the document.

*Privilege Logs.*

The Parties shall log each responsive document withheld from production and all redactions except for correspondence between counsel in this action and their respective clients on or after September 6, 2018. Parties may log document families together in one entry, as long as the claimed privilege, reason therefor, and description apply to all documents.

The Parties shall include the following categories of information in their privilege logs, to the extent applicable: (a) the type of document or documents (e.g., letter, memorandum, contract); (b) its title; (c) its date last modified or, for electronic messages (e.g., email, text message, instant message) the date sent; (d) its subject matter; (e) the name of the individual(s) who authored, drafted, created, designed, or prepared it; (f) the name of the individual(s) to whom it was directed, circulated, or copied; (g) the grounds on which the document is being withheld (e.g., "attorney client privilege," "work product immunity," etc.); and (h) the Bates number of the document if produced and redacted or a unique control number if withheld from production.

The Parties shall identify all attorneys appearing on the privilege log, and may do so using a designated symbol (e.g., an asterisk) next to each attorney's name.

**II. Production Specifications**

*Format.*

Documents shall be produced to the requesting Party as text-searchable TIFF files. When a text-searchable image file is produced, the producing Party must preserve the integrity of the underlying ESI, i.e., the original formatting, metadata, and revision history. The Parties shall produce their documents in the following format: single page TIFF images, at a resolution of at least 300 dots-per-inch (dpi), and associated multi-page text files containing extracted text or Optical Character Recognition ("OCR") with Concordance and Opticon load files containing all requisite information including metadata.

Hidden content, tracked changes, edits, comments, notes, and other similar information viewable within the native file shall also be imaged so that this information is captured in the produced image file.

*Native Files.*

Audio, video, spreadsheet, presentation, database, and other similar files that cannot be produced in TIFF format so as to be reasonably reviewable shall be produced as native files instead of producing TIFF images. To the extent that any such files contain privileged information, such information shall be redacted, as appropriate, from the native file. All other production format requirements shall still apply to documents produced in native format, including the requirement of production of applicable metadata fields. All documents produced in native format shall be produced with a placeholder TIFF image with Bates numbering (as described below) and the phrase "Document Produced Natively" in the body of the TIFF image.

The Parties may request that any document be produced in native format. Any such request shall be made for specific documents, identified by Bates numbers, and shall not be unreasonably denied. The Parties shall confer in good faith to resolve any questions about what files shall be produced in native format.

*Color.*

Documents containing color need not be produced in color, except upon a Party's/Parties' reasonable written request for a particular document(s) to be produced in color, which request shall include the basis therefor, including, for example, an explanation of why color appears to be necessary to understand the meaning or content of the document.

*Searchable Text.*

For each document containing searchable text, a single text file shall be provided along with the image files and metadata. The text file name shall be the same as the Bates number of the first page of the document. The Parties do not need to extract text or produce the document in text-searchable form when it is not available (e.g., for photographs or hard copy documents that could not be processed with OCR).

*Bates Numbering.*

All TIFF images will be endorsed with a unique production number (i.e., a "Bates number" or "Bates stamp") at a location that does not obscure any part of the underlying images. The Bates numbers shall be unique, always contain the same number of digits with no spaces, and be zero-padded (i.e., the Parties will add leading zeros to all Bates numbers in order to maintain a consistent number of digits on all Bates numbers). Native-format documents will be produced with TIFF placeholders endorsed with Bates numbers. Bates numbering shall be sequential and shall not skip any numbers, so as not to create gaps in the sequence.

*Metadata Fields.*

The Parties should endeavor to collect all ESI in a forensically sound manner so as to preserve all available metadata where practicable. However, the Parties are obligated to provide metadata only in the following fields (or fields containing equivalent data), and only to the extent such metadata exists and collection of such data is feasible given the producing Party's information security policies:

**Attachment Begin** — The first Bates stamp value in the produced attachment range for a record.

**Attachment End** — The last Bates stamp value in the produced attachment range for a record.

**Author** — The application-recorded "author" field of a record.

**Bates Begin** — The first Bates stamp value in the produced document range for a record. For native-only productions this would be the value assigned to the placeholder image.

**Bates End** — The last Bates stamp value in the produced document range for a record. For native-only productions this would be the value assigned to the placeholder image.

**Confidentiality** — The confidentiality designation assigned to a particular document in accordance with any relevant protective order(s).

**Conversation Index** — The first Bates stamp value in the produced document range for a particular family.

**Custodian** — The primary custodian name as assigned to a record.

**Date Created** — The application-recorded date indicating when a record was created.

**Date Modified** — The application-recorded date indicating when a record was last modified.

**Date Received** — The date captured by the mail store indicating when an e-mail record was received.

**Date Sent** — The date captured by the mail store indicating when an e-mail record was sent.

6

**Duplicate Custodian** — A list of all custodians for a given record if a Party chooses to use any form of deduplication.

**Duplicate File Path** — A list of all original paths for a record as it was included in the collection if a Party chooses to use any form of deduplication.

**File Extension** — The original extension of the record as it was included in the collection.

**File Path** — The original path of the record as it was included in the collection.

**File Size** — The size of any record, including attached or embedded objects, in bytes.

**Filename** — The original name of the record as it was included in the collection.

**From** — The information contained in the "From" field of an e-mail record.

**To** — The complete list of all names and e-mails of all individuals contained in the "To" field of an e-mail record.

**CC** — The complete list of all names and e-mails of all individuals contained in the "CC" field of an e-mail record.

**BCC** — The complete list of all names and e-mails of all individuals contained in the "BCC" field of an e-mail record.

**Subject** — If an e-mail, then the subject line of the e-mail. If an Office document, then the application-recorded "subject" field of the record.

**Native Path** — The file path to each respective produced native file in the production.

**Text Path** — The file path to each extracted text/OCR text file in the production.

**Time Received** — The time captured by the mail store indicating when an e-mail record was received.

**Time Sent** — The time captured by the mail store indicating when an e-mail record was sent.

**Title** — The application-recorded "title" field of a record.

This list of fields does not create any obligation to create or manually code fields that are not automatically generated by industry-standard processing of the ESI, or that do not exist as part of the original metadata of the document. Metadata shall be provided in a delimited text file that uses

7

Concordance default delimiters, and each field type shall conform to industry standards for the type of metadata being produced.

*Specific Processing Settings.*

The Parties will make good-faith efforts to withhold from the production non-substantive graphics, inline images, and other "junk files" that do not contain information relevant to this case.

*Email Threads.*

The Parties agree to produce all documents in an email thread, including by separately producing earlier, less inclusive emails.

*Paper Documents.*

Paper documents included in a Party's production shall be converted page-by-page into TIFF files and OCR text, reflecting the full and complete information contained in the original document, and produced following the same protocols set forth above. Imaged copies of scanned paper documents will be logically unitized to preserve breaks between documents and otherwise allow separate documents to be identified. The Parties will make their best efforts to unitize the documents correctly. In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind tabs), each of the paper documents should be separately scanned together with the tab, divider, or other organizational marker that precedes the document in the compilation. The relationship among the documents in the compilation should also be reflected in the proper metadata coding of the beginning and ending documents and attachment fields.

### III. Miscellaneous

*Staged Production.*

The Parties may produce ESI in stages, provided that production is completed in accordance with the deadlines set forth in any applicable Scheduling Order or rule.

*Time Zone.*

When processing documents, Coordinated Universal Time ("UTC") or Eastern Standard Time ("EST") shall be selected as the time zone.

*Third-Party ESI.*

A Party that issues a non-party subpoena shall include with the subpoena a copy of this Order and the protective order(s) agreed to by the Parties and entered by the Court in this action, if any, and shall state that the Parties in the litigation have requested that third parties produce documents in accordance with the specifications set forth herein.  Any Party who serves a non-party subpoena for documents and/or testimony shall provide notice of same to all Parties to this action in accordance with Federal Rules of Civil Procedure.

Counsel shall attempt to resolve with any non-party deponent the production of any documents or materials being subpoenaed.  To the maximum extent practicable, such production shall be completed at least seven (7) calendar days before a deposition is scheduled to commence.

The issuing Party shall produce a copy to all other Parties of any documents and ESI (including any metadata) obtained under subpoena to a non-party within five (5) calendar days of receiving the documents and ESI. If the non-party production is not Bates-stamped, the issuing Party will endorse the non-party production with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties.

*Best Efforts Compliance and Disputes.*

The Parties agree to use their best efforts to comply with, and resolve any differences concerning compliance with, any provision of this Order. No Party may seek relief from the Court concerning compliance or non-compliance with this Order until it has met and conferred with the other Party in a good-faith effort to resolve or narrow the area of disagreement. Similarly, if a Party determines that a variation or modification is necessary to facilitate the timely and economical production of documents and ESI, then it shall promptly notify the requesting Party, and the Parties shall meet and confer in good faith regarding the appropriateness of the variation or modification.

This Order may be modified only by the Court for good cause shown.

IT IS SO ORDERED this __26__ day of __January__, 2021.

*/s/ Kevin Nathaniel Fox*
_____
HON. KEVIN N. FOX
UNITED STATES MAGISTRATE JUDGE