**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------- X
PILKINGTON NORTH AMERICA, INC.,      :
                                     :
          Plaintiff,                 :          No. 18 Civ. 8152 (JFK)
                                     :
   -against-                         :          **OPINION & ORDER**
                                     :
MITSUI SUMITOMO INSURANCE COMPANY    :
OF AMERICA and AON RISK SERVICES     :
CENTRAL, INC.,                       :
                                     :
          Defendants.                :
--------------------------------- X
MITSUI SUMITOMO INSURANCE COMPANY    :
OF AMERICA,                          :
                                     :
          Third-Party Plaintiff,     :
                                     :
   -against-                         :
                                     :
AON UK LIMITED, NIPPON SHEET GLASS   :
CO. LTD., and MITSUI SUMITOMO        :
INSURANCE CO. LTD.,                  :
                                     :
          Third-Party Defendants.    :
--------------------------------- X

APPEARANCES

FOR DEFENDANT/THIRD-PARTY PLAINTIFF MITSUI SUMITOMO INSURANCE
COMPANY OF AMERICA:
     Brian E. O'Donnell, RIKER DANZIG SCHERER HYLAND & PERRETTI LLP

FOR DEFENDANT AON RISK SERVICES CENTRAL, INC. and THIRD-PARTY
DEFENDANT AON UK LIMITED:
     Robert B. Ellis, Michael S. Biehl, Lauren Casazza, Rana B.
     Dawson, Kelsey Bleiweiss, KIRKLAND & ELLIS LLP

FOR THIRD-PARTY DEFENDANT NIPPON SHEET GLASS CO. LTD.:
     Marc L. Abrams, Andre K. Cizmarik, Whitney M. Costin,
     MINTZ, LEVIN, COHN, FERRIS, GLOVSKY and POPEO, P.C.

1

**JOHN F. KEENAN, United States District Judge:**

Before the Court are motions by Third-Party Defendants Nippon Sheet Glass Co., Ltd. ("NSG") and Aon UK Limited ("Aon-UK") to dismiss third-party claims brought by Defendant/Third-Party Plaintiff Mitsui Sumitomo Insurance Company of America ("MSI" or "MSI-US"). NSG and Aon-UK both argue that MSI's Third-Party Complaint ("the TPC") should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) for, respectively, lack of personal jurisdiction and failure to state a claim upon which relief can be granted.

For the reasons set forth below, NSG's and Aon-UK's Rule 12(b)(2) motions are DENIED; their Rule 12(b)(6) motions, however, are GRANTED.

## I. Background

### A. Overview

This action arises out of an approximately $60 to $100 million loss that Plaintiff Pilkington North America, Inc. ("Pilkington") incurred when a tornado ("the Tornado") struck its glass manufacturing factory in Ottawa, Illinois on or around February 28, 2017. Pilkington seeks compensation for the loss pursuant to a commercial property and business interruption insurance policy that was issued by MSI to NSG Holding USA II, Inc., a division of Pilkington's Japanese parent company, NSG

(together with Pilkington and NSG's other subsidiaries, "the NSG Group").

Pilkington initiated this action seeking damages or indemnification from MSI for the loss caused by the Tornado because, Pilkington alleges, MSI misrepresented certain changes it proposed and inserted into Pilkington's insurance policy ("the U.S. Local Policy") which was in effect the year prior to the Tornado ("the 2015–2016 U.S. Local Policy"). Pilkington alleges that, in 2015, MSI misleadingly requested certain revisions to the then-active 2015–2016 U.S. Local Policy from MSI's co-defendant in this action, Aon Risk Services Central, Inc. ("Aon-US"), who served as Pilkington's insurance broker. In addition to its claims against MSI, Pilkington seeks damages from Aon-US for failing to notify it that one branch of MSI's proposal ("the Endorsement") materially changed the wording of a sublimit applicable to certain types of windstorms, thereby substantially reducing coverage for events like the Tornado. The gravamen of Pilkington's case centers on allegations that MSI misrepresented the terms of the Endorsement to Aon-US; and on Aon-US's negligence in recommending Pilkington agree to the Endorsement and carelessly incorporating those same terms into the following year's policy ("the 2016–2017 U.S. Local Policy") which was in effect when the Tornado struck.

On September 6, 2018, Pilkington filed a complaint against MSI and Aon-US. MSI and Aon-US subsequently moved to dismiss the complaint, after which Pilkington filed an amended complaint ("the AC") on December 2, 2019. The AC asserts five claims against MSI for reformation of contract, breach of contract, declaratory relief, breach of the implied duty of good faith and fair dealing, and equitable estoppel; and four claims against Aon-US for breach of contract, negligence, negligent misrepresentation, and breach of fiduciary duty.[1]

As relevant here, on May 18, 2020, the Court denied a motion by MSI to dismiss the AC in its entirety. See Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am., 460 F. Supp. 3d 481, 492–500 (S.D.N.Y. 2020). The Court ordered the parties to proceed to discovery under the supervision of Magistrate Judge Fox and to join any additional parties by June 15, 2020. See id. at 502.

On June 15, 2020, MSI filed an amended answer which asserted counterclaims against Pilkington for equitable estoppel and declaratory judgment; and crossclaims against Aon-US for breach of contract, breach of the implied covenant of good faith and fair dealing, contractual indemnification, negligent

---

[1] The AC also asserted an intentional misrepresentation claim against Aon-US, however, on May 18, 2020, the Court dismissed that claim with prejudice. See Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am., 460 F. Supp. 3d 481, 502 (S.D.N.Y. 2020).

misrepresentation, and contribution.  Pilkington and Aon-US each
moved to dismiss MSI's claims.

On November 10, 2020, and January 5, 2021, respectively,
the Court granted Pilkington's motion to dismiss MSI's
counterclaims and referred to arbitration MSI's crossclaims
against Aon-US (as well as crossclaims Aon-US brought against
MSI). See Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of
Am., No. 18 Civ. 8152 (JFK), 2020 WL 6585702, at *1 (S.D.N.Y.
Nov. 10, 2020); Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins.
Co. of Am., No. 18 Civ. 8152 (JFK), 2021 WL 37691, at *1
(S.D.N.Y. Jan. 5, 2021).  On March 2, 2021, the Court denied a
motion by MSI for reconsideration of its order dismissing MSI's
counterclaims but granted MSI's request for clarification,
explaining that the so-called "law of the case doctrine" would
not presumptively bind the Court's hands when considering the
viability of MSI's claims against other parties, such as the
instant claims against NSG and Aon-UK. See Pilkington N. Am.,
Inc. v. Mitsui Sumitomo Ins. Co. of Am., No. 18 Civ. 8152 (JFK),
2021 WL 797674, at *1, *3-4 (S.D.N.Y. Mar. 2, 2021).

### B.  MSI's Third-Party Complaint

On June 15, 2020, the same day MSI asserted the cross- and
counterclaims discussed above, MSI filed the TPC against Aon-
US's affiliate in the United Kingdom, Aon-UK; Pilkington's
Japanese parent, NSG; and MSI's Japanese parent, Mitsui Sumitomo

Insurance Co. Ltd. ("MSI-J"). (Third-Party Compl. ("TPC"), ECF No. 115.) The TPC claims that MSI does not owe anything to Pilkington beyond the $15 million MSI has already paid Pilkington under the terms of the 2016–2017 U.S. Local Policy. (Id. ¶¶ 5–7.) Accordingly, the TPC asserts, MSI seeks two forms of relief: First, MSI seeks a declaration that coverage for losses arising from a windstorm in the United States is subject to a $15 million sublimit contained in a so-called "Global Program"—essentially a master insurance policy between NSG and MSI-J. (Id. ¶ 7.) As such, the TPC joins MSI-J as a third-party defendant because MSI's declaratory request is against the parties to the Global Program: Pilkington's parent, NSG, and MSI's parent, MSI-J. (Id. ¶¶ 10, 82–90.) In the alternative, and in the event MSI incurs liability to Pilkington in this action, the TPC seeks compensatory damages from NSG and Aon-UK for certain misrepresentations and breaches of fiduciary duties that each allegedly owed to MSI and/or Pilkington. (Id. ¶ 8.)

In support of MSI's third-party claims, the TPC alleges the following facts which, at this procedural stage, the Court presumes to be true. See Lynch v. City of New York, 952 F.3d 67, 74–75 (2d Cir. 2020); Porina v. Marward Shipping Co., 521 F.3d 122, 126 (2d Cir. 2008).

MSI is an insurance company organized under the laws of New York, licensed in New York, and with a statutory home office

6

located in New York.  (TPC ¶ 9.)  MSI-J is a Japanese insurance company with a principal place of business in Tokyo, Japan. (Id. ¶ 10.)

Aon-UK is a foreign corporation with a principal place of business in London, England.  (Id. ¶ 11.)  Aon-UK and Aon-US are "affiliates" of one another, however, the TPC implies that Aon-UK directs and oversees Aon-US with respect to the Global Program.  (Id. ¶¶ 34, 37, 44-46.)  Aon-US is an Illinois insurance broker.

Pilkington is a Delaware manufacturer and a wholly owned subsidiary of NSG, which is a foreign corporation with a principal place of business in Tokyo, Japan.  (Id. ¶¶ 12, 16.) The TPC alleges that NSG has the responsibility to, among other things, arrange property insurance coverage for its subsidiaries worldwide, including Pilkington.  (Id. ¶ 17.)

The 2016–2017 U.S. Local Policy in effect when the Tornado struck was issued as part of a long-standing and comprehensive global risk transfer program ("the Global Program") involving NSG, Aon-UK, and MSI-J.  (Id. ¶¶ 3-4, 19.)  The Global Program was developed and marketed by Aon-UK, and it consisted of the following interrelated contracts which were designed to enable the NSG Group to save money by self-insuring many of NSG's business operations:

1) a "Master Policy" issued to NSG by MSI-J, which provided direct coverage in jurisdictions where MSI-J was authorized to transact insurance business, and supplemental coverage in jurisdictions where MSI-J was not authorized to transact business directly;

2) "Local Policies" issued by MSI-J's affiliates—such as its United States affiliate, MSI or MSI-US—where MSI-J was not authorized to transact insurance business directly;

3) a "Reinsurance Program" designed to indemnify MSI-J for certain liabilities resulting from its participation in the Global Program; and

4) a "Captive Insurance Company" that was ultimately owned and controlled by NSG and which participated in reinsuring MSI-J. (Id. ¶¶ 3–4, 19–21, 40–46.)

Aon-UK acted as NSG's agent and was its broker of record with respect to the Global Program. (Id. ¶¶ 32–33.) In that capacity, Aon-UK served as the communications control center for the program, prepared relevant materials related to the Master and Local Policies, negotiated the terms and conditions of the Global Program with MSI-J, and ensured consistent global coverage for the NSG Group by, among other things, reviewing local policies to ensure they reflected the terms and conditions negotiated at the global level. (Id. ¶ 34.) Aon-UK also was responsible for structuring and marketing the Reinsurance Program. (Id. ¶ 35.) Aon-UK received annual commissions for its roles in placing the insurance and reinsurance components of the Global Program. (Id. ¶ 36.)

Each year, the material terms and conditions of the Global Program were negotiated and agreed to in the United Kingdom and

Japan at the parent company level between MSI-J, NSG, and Aon-UK.  (Id. ¶ 40.)  Once these terms were settled, Aon-UK and MSI-J transmitted the information to their local affiliates, such as Aon-US and MSI-US.  (Id. ¶¶ 43-44.)  Based on "instructions" provided by Aon-UK, Aon-US provided MSI-US with a so-called "market submission" which requested terms of coverage under the U.S. Local Policy.  (Id. ¶ 45.)  Thereafter, MSI-US provided Aon-US with a quotation of coverage for the U.S. Local Policy, which Aon-US reviewed and reconciled with its instructions from Aon-UK before asking MSI-US to bind coverage.  (Id. ¶ 46.)

At all relevant times, Aon-US was Pilkington's broker of record and agent with respect to the negotiation and placement of the U.S. Local Policies.  (Id. ¶¶ 37-38.)  As a general practice, MSI-US did not communicate directly with Pilkington.  (Id. ¶ 39.)  Instead, MSI-US typically provided all information about the U.S. Local Policies to Pilkington's agent, Aon-US.  (Id.)

As relevant here, the Global Program in effect when the Tornado struck limited to $15 million the total coverage afforded to the NSG Group for damages arising from a windstorm in the United States.  (Id. ¶ 5.)  The TPC alleges that the parties intended for the Master Policy to set the outer boundary of coverage available to the NSG Group under the Global Program, and for the terms and conditions of the Local Policies—such as

9

the U.S. Local Policy at issue here—to mirror those of the Master Policy. (Id. ¶¶ 22–23.) The TPC further alleges that the U.S. Local Policy provides that its limits and coverages depend on, and may be restricted by, the limits and coverages in the Master Policy. (Id. ¶ 26.)

After the discussions between MSI-US and Aon-US regarding the Endorsement, and around the time in January 2016 when the Endorsement was incorporated into Pilkington's then-active 2015–2016 U.S. Local Policy,[2] Aon-UK prepared and transmitted to MSI-J a market submission for the 2016–2017 Global Program. (Id. ¶ 47.) Aon-UK's submission requested a $15 million sublimit for all windstorm losses in the United States and specified that local policies should be issued with similar coverage. (Id. ¶¶ 48–49.)

In or around March 2016, Aon-US likewise prepared and transmitted a market submission for the 2016–2017 U.S. Local Policy to MSI-US. (Id. ¶ 50.) In accordance with the terms

---

[2] The TPC does not include allegations regarding the Endorsement. Nevertheless, these facts appear at paragraphs 46 through 56 of MSI's Amended Counterclaims & Crossclaims, ECF No. 116, and the Court includes them here to provide a reasonable and candid summary of MSI's allegations in this action. (See also MSI's Opp'n at 4 n.3 (citing Pilkington's Amended Complaint and MSI's Amended Answer with Counterclaims & Crossclaims), ECF No. 213.) Further, these facts are central to Pilkington's claim to relief from MSI, upon which the TPC relies heavily in asserting MSI's rights to relief from NSG and Aon-UK. Accord Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002) (explaining a complaint may be deemed to include any statements or documents incorporated in it by reference).

negotiated and agreed to at the global level, Aon-US's submission requested a $15 million windstorm sublimit ("the Windstorm Sublimit").  (Id.)  MSI's New York-based underwriter provided Aon-US with a quote for the requested coverage.  (Id. ¶ 51; Ex. 2 to TPC, ECF No. 115-2.)  Approximately three days later, Aon-US requested MSI's New York-based underwriter "please proceed with policy issuance," explaining "[w]e have reconciled your quote with our instructions from U.K."  (TPC ¶ 52; Ex. 3 to TPC, ECF No. 115-3.)

In accordance with the coverage requested under the Global Program, and the information contained in Aon-US's market submission, MSI-US issued, from its New York office, the 2016–2017 U.S. Local Policy with the $15 million Windstorm Sublimit. (Id. ¶¶ 53–54.)  The TPC alleges that these terms were consistent with the coverage provided under the Master Policy for windstorms in the United States every year since 2009, when the MSI group of companies first participated in the Global Program.  (Id. ¶ 55.)  Likewise, the reinsurance coverage procured by Aon-UK for windstorm losses in the United States under the 2016–2017 Global Program was subject to a $15 million limit, which was consistent with the reinsurance coverage obtained by Aon-UK for windstorms in the United States every year since 2009.  (Id. ¶ 56.)

In early-2017, the Tornado struck Pilkington's facility. (Id. ¶ 57.)  Pilkington provided MSI-US with a notice of damages, claiming total losses of between $60 million and $100 million.  (Id. ¶¶ 58-59.)  MSI-US determined that the $15 million Windstorm Sublimit applied and paid Pilkington that amount, after which Pilkington initiated this action to recover the balance of its losses because, Pilkington asserts, it did not request or agree to a $15 million sublimit applicable to windstorms such as the Tornado.  (Id. ¶¶ 60-61, 64.)  Rather, Pilkington argues, MSI defrauded it (and Aon-US) into accepting the Endorsement's revisions to the windstorm sublimit in Pilkington's 2015-2016 U.S. Local Policy, and Aon-US subsequently and inexcusably incorporated those same fraudulently revised terms into the 2016-2017 U.S. Local Policy. See Pilkington, 460 F. Supp. 3d at 488.

## II.  NSG's and Aon-UK's Motions to Dismiss

The TPC alleges that, if MSI is found liable to Pilkington, it is entitled to damages from NSG and/or Aon-UK for negligent misrepresentation.  (TPC ¶¶ 65-71, 75-81.)  MSI also brings a contribution claim against Aon-UK seeking an equitable pro rata share of any liability it may incur to Pilkington because, MSI asserts, Aon-UK's actions contributed to any damage, loss, or harm sustained by Pilkington.  (Id. ¶ 74.)  Finally, the TPC asserts a declaratory judgment claim against NSG and MSI-J

alleging that the U.S. Local Policy under which Pilkington seeks relief cannot be interpreted in isolation and must be read together with the Global Program's Master Policy between NSG and MSI-J. (Id. ¶¶ 86, 88.) Accordingly, MSI seeks a declaratory judgment by this Court concerning the 2016–2017 Global Program.[3] (Id. ¶¶ 88, 90.)

On December 8, 2020, and February 3, 2021, respectively, Aon-UK and NSG moved to dismiss MSI's third-party claims pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (ECF Nos. 186, 187, 210, 211.) MSI opposed the motions. (ECF Nos. 188, 213.) Aon-UK and NSG filed replies. (ECF Nos. 190, 215.) The Court heard the motions during a telephonic argument on March 10, 2021. (ECF No. 221.)

## A. Legal Standard

### 1. Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction

On a Rule 12(b)(2) motion to dismiss, "a plaintiff must make a prima facie showing that jurisdiction exists." Thomas v. Ashcroft, 470 F.3d 491, 495 (2d Cir. 2006). "This showing may

---

[3] MSI's counterclaims against Pilkington included a similar request for a declaration of the parties' rights and obligations under the Global Program. See Pilkington, 2020 WL 6585702, at *6. On November 10, 2020, however, the Court dismissed MSI's similar declaratory judgment counterclaim as redundant. See id. MSI subsequently moved for reconsideration or clarification of certain findings in the November 10, 2020 decision, but MSI did not challenge the Court's dismissal of its declaratory judgment counterclaim. See Pilkington, 2021 WL 797674, at *2.

be made through the plaintiff's own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." S. N. Eng. Telephone Co. v. Global NAPs, Inc., 624 F.3d 123, 138 (2d Cir. 2010) (internal quotation marks omitted). "In determining whether a plaintiff has met this burden, we will not draw argumentative inferences in the plaintiff's favor, nor must we accept as true a legal conclusion couched as a factual allegation." In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013) (citations and internal quotation marks omitted).

In diversity cases, such as this one, "personal jurisdiction is determined in accordance with the law of the forum in which the federal court sits." Minnie Rose LLC v. Yu, 169 F. Supp. 3d 504, 512 (S.D.N.Y. 2016). New York courts apply a two-step analysis: First, the Court must "determine whether personal jurisdiction is appropriate pursuant to the State's general jurisdiction statute, Civil Practice Law and Rules ("C.P.L.R.") § 301, or its long-arm jurisdiction statute, C.P.L.R. § 302(a)." Id. "If and only if the Court's exercise of personal jurisdiction is deemed appropriate according to New York law, the second step is an evaluation of whether the Court's exercise of personal jurisdiction comports with the Fifth Amendment Due Process Clause of the United States

Constitution." Id.  Here, MSI does not assert general

jurisdiction over NSG or Aon-UK.  Therefore, the relevant

inquiry is whether specific jurisdiction over either exists

under C.P.L.R. § 302(a), which provides in relevant part that "a

court may exercise personal jurisdiction over any non-

domiciliary . . . who in person or through an agent . . .

transacts any business within the state." N.Y. C.P.L.R. §

302(a)(1).

      "To establish personal jurisdiction under section

302(a)(1), two requirements must be met:  (1) The defendant must

have transacted business within the state; and (2) the claim

asserted must arise from that business activity." Eades v.

Kennedy, PC Law Offices, 799 F.3d 161, 168 (2d Cir. 2015)

(quotation marks omitted).  "A defendant transacts business

within the meaning of § 302(a)(1) when it purposefully 'avails

itself of the privilege of conducting activities [in New York],

thus invoking the benefits and protections of its laws.'" Minnie

Rose, 169 F. Supp. 3d at 513–14 (quoting Fischbarg v. Doucet,

880 N.E.2d 22, 26 (N.Y. 2007)) (alteration in original).

"Section 302(a)(1) is a 'single act' statute:  '[P]roof of one

transaction in New York is sufficient to invoke jurisdiction,

even though the defendant never enters New York, so long as the

defendant's activities here were purposeful and there is a

substantial relationship between the transaction and the claim

asserted.'" Id. at 514 (quoting Kreutter v. McFadden Oil Corp.,
522 N.E.2d 40, 43 (N.Y. 1988)) (alteration in original).  "To
determine whether a party has 'transacted business' in New York,
courts must look at the totality of circumstances concerning the
party's interactions with, and activities within, the state."
Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d
779, 787 (2d Cir. 1999).  "Rule 302(a)(1) jurisdiction 'requires
only a minimal quantity of activity, provided that it is of the
right nature and quality.'" Siegel v. Ford, No. 16 Civ. 8077
(JPO), 2017 WL 4119654, at *4 (S.D.N.Y. Sept. 15, 2017)
(citation and quotation marks omitted).

Under the second step of the analysis, "due process
requires a plaintiff to allege (1) that a defendant has certain
minimum contacts with the relevant forum, and (2) that the
exercise of jurisdiction is reasonable in the circumstances."
SPV Osus Ltd. v. UBS AG, 882 F.3d 333, 343 (2d Cir. 2018)
(quoting In re Terrorist Attacks, 714 F.3d at 674).  "The
requisite minimum contacts analysis overlaps significantly with
New York's § 302(a)(1) inquiry into whether a defendant
transacted business in the State." Minnie Rose, 169 F. Supp. 3d
at 515 (internal quotation marks omitted).  Where personal
jurisdiction is permitted under New York's long-arm statute,
"[i]t would be unusual, indeed," for such jurisdiction to be

found unconstitutional. <u>Licci ex rel. Licci v. Lebanese Canadian Bank, SAL</u>, 732 F.3d 161, 170 (2d Cir. 2013).

### 2. Rule 12(b)(6) motion to dismiss for failure to state a claim

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. Consequently, to survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." <u>Keiler v. Harlequin Enters. Ltd.</u>, 751 F.3d 64, 70 (2d Cir. 2014) (citations omitted).

"[I]n deciding a Rule 12(b)(6) motion to dismiss a complaint, [the Court] is required to accept all 'well-pleaded factual allegations' in the complaint as true." <u>Lynch</u>, 952 F.3d at 74-75 (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009)). "Although allegations that are conclusory are not entitled to be assumed true, when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u> at 75 (alterations, citations, and internal quotation marks omitted). "The court must also 'construe all reasonable inferences that

can be drawn from the complaint in the light most favorable to the plaintiff.'" Id. (quoting Arar v. Ashcroft, 585 F.3d 559, 567 (2d Cir. 2009) (en banc), cert. denied, 560 U.S. 978 (2010)). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct." Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). In ruling on a motion to dismiss, the Court is generally "limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).

### B. Discussion

"When the Court is confronted by a motion raising a combination of Rule 12(b) defenses, it will pass on the jurisdictional issues before considering whether the Complaint states a claim." Minnie Rose, 169 F. Supp. 3d at 512. Accordingly, the Court first considers whether personal jurisdiction over NSG and Aon-UK is appropriate before evaluating whether MSI's claims against each satisfy Rule 12(b)(6).

As an important preliminary matter, and for the third time
in this action, see Pilkington, 2021 WL 797674, at *3 n.1;
Pilkington, 460 F. Supp. 3d at 488-89 n.1, the Court is again
troubled by certain of MSI's representations regarding facts
alleged in the operative complaint, many of which questionable
assertions were discussed during oral argument on March 10,
2021.  That being said, and all sides being reminded of their
professional obligations when appearing in courts of the United
States, this Opinion & Order need not recount or contrast MSI's
problematic representations with the TPC's actual allegations
because, as discussed below, even if the TPC alleged what MSI
now asserts, MSI's third-party claims still do not satisfy Rule
12(b)(6).

### 1. The Court has personal jurisdiction over NSG and Aon-UK

MSI argues that the Court has specific personal
jurisdiction over NSG and Aon-UK under an agency theory of
jurisdiction: namely, that each transacted and benefited from
conducting business in New York with respect to the U.S. Local
Policy at issue based on actions Aon-US took on their behalf to
procure the policy.[4]  NSG and Aon-UK both counter with a similar

---

[4] As discussed above, certain of MSI's factual assertions do not find
clear support in the TPC.  Here, for example, the TPC does not allege
that Aon-US acted as an agent of NSG or Aon-UK—to the contrary, the
only allegations of an agency relationship involving Aon-US are that
"[a]t all relevant times," Aon-US "was the broker of record for
Pilkington[]" and "acted as Pilkington[]'s agent" with respect to the

argument: (1) that the TPC fails to plausibly allege an agency relationship between themselves and Aon-US because the TPC does not demonstrate that NSG or Aon-UK controlled Aon-US, benefitted from Aon-US's in-state activities, or had any reason to expect that their overseas conduct would have direct consequences in New York; and (2) that, in any event, Aon-US's purported minimum contacts with New York are not sufficient to establish jurisdiction.

When considering whether a plaintiff makes a prima facie showing of jurisdiction, "the court must assume the truth of all allegations in the complaint and must resolve all doubts in plaintiff's favor 'notwithstanding a controverting presentation by the moving party.'" Quest Trading, LLC v. Com. & Indus. Ins. Co., No. 16 Civ. 735 (NRB), 2017 WL 946421, at *4 (S.D.N.Y. Feb. 15, 2017) (quoting A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79–80 (2d Cir. 1993)). Here, MSI's allegations of specific personal jurisdiction turn on Aon-US's contacts with New York in procuring the 2016–2017 U.S. Local Policy from MSI. "To decide whether Aon[-US] acted as the agent of [NSG and Aon-UK] requires an analysis of 'the realities of the relationship in question rather than the formalities of agency law.'" Nat'l Union Fire

---

U.S. Local Policies. (TPC ¶¶ 37–38.) Nevertheless, the Court construes the TPC in a light most favorable to MSI and accepts MSI's assertion that Aon-US took certain actions on behalf of NSG, Aon-UK, and Pilkington.

Ins. Co. of Pittsburgh, PA. v. BP Amoco P.L.C., 319 F. Supp. 2d
352, 360 (S.D.N.Y. 2004) (quoting CutCo Indus., Inc. v.
Naughton, 806 F.2d 361, 366 (2d Cir. 1986)). "For purposes of
personal jurisdiction, an agent is a person or entity that acts
'for the benefit of, and with the knowledge and consent of, the
non-resident principal,' and over which that principal exercises
'some control.'" Id. (quoting CutCo, 806 F.2d at 366) (internal
citation omitted).

As explained in National Union Fire Insurance Co. v. BP
Amoco, which involved a similar challenge to personal
jurisdiction,

> [i]f X transacts business in New York, then X will be
> subject to personal jurisdiction on a cause of action
> arising out of that transaction.  If X instead hires Y
> to transact the same business in New York, and Y's
> contacts with New York relative to that transaction
> would suffice to confer on a New York court personal
> jurisdiction over Y, then X will also be subject to
> personal jurisdiction on a cause of action arising out
> of that transaction.

Nat'l Union, 319 F. Supp. 2d at 363 (citing CutCo, 806 F.2d at
366).  Of particular relevance here, the court further explained
that,

> [i]f X decides that rather than either transact the same
> business itself or hire an agent to do so, it would
> prefer not to be bothered, and for that reason delegates
> authority to Y to transact the same business; and Y, in
> turn, exercises that authority by hiring Z as its agent;
> and Z's contacts with New York would suffice to give
> rise to specific long-arm jurisdiction over Z; then,
> again, X will be subject to jurisdiction on a cause of
> action arising out of Z's, the agent's, transaction.

Id.

Construing MSI's allegations as true and resolving all
doubts in its favor, under the principles articulated in
National Union, NSG and Aon-UK purposefully availed themselves
of the privilege of conducting activities in New York through
their agent Aon-US.  Accordingly, the Court has personal
jurisdiction over them. See id. at 363–64 (finding personal
jurisdiction over foreign defendants under analogous
circumstances where "[n]either the number of intermediate agency
relationships nor defendants' protestations that they lacked
actual knowledge or control over Aon can obscure the simple fact
that, at bottom, these defendants transacted certain business
essential to their activities—the negotiation, execution, and
subsequent administration of a major insurance contract—in New
York, and this action arises out of that transaction"); Quest
Trading, 2017 WL 946421, at *6 (finding personal jurisdiction
over a foreign defendant where the relevant insurance policy was
procured from a New York insurer "which issued the policy
(underwritten in New York) from New York").

Similar to National Union, here, the TPC alleges sufficient
contacts by Aon-US which can be imputed to NSG and Aon-UK based
on their delegation of responsibility to Aon-US to procure the
insurance policy at issue in this case: specifically, MSI's
allegations that (1) NSG was responsible for arranging

Pilkington's insurance coverage and in that capacity agreed to a master insurance policy with MSI-J, one element of which was a $15 million windstorm sublimit for the 2016–2017 U.S. Local Policy; (2) NSG subsequently gave responsibility to its agent, Aon-UK, to procure that policy in furtherance of the Global Program, which Aon-UK did by transmitting the information to its affiliate, Aon-US, and giving responsibility to Aon-US to obtain the policy from MSI; and (3) Aon-US, acting on Aon-UK's request and in furtherance of the Global Program, subsequently obtained the policy by (a) receiving a quote from MSI's New York-based underwriter; and (b) directly requesting, from that same underwriter, that MSI issue the requested policy.

Further, the policy Aon-US requested, MSI issued, and of which Aon-UK is allegedly responsible for "reviewing . . . to ensure that [it] reflect[ed] the terms and conditions negotiated at the global level" (TPC ¶ 34), included a New York forum selection clause (Ex. 4 to TPC at ECF Page 48 of 65, ECF No. 115-4). Accordingly, Aon-US's transaction of business within New York is sufficient to establish personal jurisdiction over it, as well as NSG and Aon-UK under an agency theory of jurisdiction. See Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004) (setting forth factors courts should consider in determining whether an out-of-state defendant transacts business in New York, including "whether the defendant has an

on-going contractual relationship with a New York corporation,"
"whether the contract was negotiated or executed in New York,"
and "what the choice-of-law clause is in any such contract");
see also Nat'l Union, 319 F. Supp. 2d at 361 ("A company cannot
deputize another to take certain actions on its behalf and then
disclaim knowledge or interest when those actions give rise to a
legal dispute.").

Given that, at this procedural stage, any doubt as to
jurisdiction is to be resolved in favor of MSI, NSG's and Aon-
UK's arguments to the contrary are not persuasive.  First, NSG
and Aon-UK argue that the TPC fails to establish that Aon-US
acted for the benefit of, and with the knowledge and consent of,
Aon-UK (and by extension NSG)—but this argument is not
convincing where the TPC asserts that Aon-UK (and NSG) did in
fact receive a benefit from Aon-US's New York contacts in the
form of crucial assistance ensuring the successful
implementation of the Global Program as a whole.  Likewise, the
TPC plausibly alleges Aon-UK's knowledge and consent of Aon-US's
New York-directed conduct where, as discussed above, Aon-US
procured the policy from a New York insurance company and the
policy included a New York forum selection clause that Aon-UK
knew or should have known was included.  Further, NSG's and Aon-
UK's assertion that minimum contacts are lacking because MSI was
the party responsible for initiating Aon-US's New York contacts

similarly fails where Aon-US nevertheless willingly reached out to MSI's New York underwriter to provide Pilkington's market submission and, a few days later, affirmatively requested that underwriter "please proceed with policy issuance." (Ex. 3 to TPC, ECF No. 115-3.)

Finally, the Court is not persuaded by NSG's and Aon-UK's protestations that the TPC fails to allege Aon-UK's control of Aon-US because the TPC plausibly asserts that Aon-US requested MSI issue the 2016–2017 U.S. Local Policy only after first "reconcil[ing]" MSI's quote with "instructions" from Aon-UK. This, together with MSI's other nonconclusory allegations regarding Aon-UK's relationship with NSG, its senior position marketing and overseeing the Global Program, and the interplay between the terms of the U.S. Local Policy and those of the Master Policy, give rise to the inference that NSG and Aon-UK designed and dictated to Aon-US what terms Aon-US was to procure from MSI. Cf. Gerstle v. Nat'l Credit Adjusters, LLC, 76 F. Supp. 3d 503, 510 (S.D.N.Y. 2015) (finding assertions of jurisdiction based on a theory of agency insufficient where, unlike here, the allegations were "broadly worded and vague," "not described in any factual detail," and "boilerplate"). Accordingly, MSI has established a prima facie showing of personal jurisdiction over NSG and Aon-UK consistent with New York's long-arm statute, and, for those same reasons, such

jurisdiction is reasonable under the circumstances and comports with due process. See Charles Schwab Corp. v. Bank of Am. Corp., 883 F.3d 68, 85 (2d Cir. 2018) (explaining New York's statutory requirements of "benefit, knowledge, [and] some control" are consonant with due process, "[a]nd where we have found personal jurisdiction based on an agent's contacts, we have never suggested that due process requires something more than New York law").

## 2. The TPC fails to state a claim against NSG

Turning to the sufficiency of MSI's claims against NSG, the TPC alleges that the U.S. Local Policy under which Pilkington seeks relief cannot be interpreted in isolation and must be read together with the Master Policy between NSG and MSI-J to prevent potentially inconsistent interpretations of the parties' rights and obligations under the Global Program. (TPC ¶ 86.) Accordingly, MSI seeks a declaration from this Court that a $15 million sublimit in the 2016–2017 Global Program applies to all windstorm losses in the United States. (Id. ¶ 90.) In the alternative, MSI alleges that if it is found liable to Pilkington, it is entitled to damages from NSG (and Aon-UK) for negligent misrepresentation. (Id. ¶¶ 71, 81.)

NSG moves to dismiss both third-party claims pursuant to Rule 12(b)(6) principally on the grounds that (1) MSI's declaratory judgment claim is not properly before the Court

because the Master Policy requires arbitration and includes a provision subjecting the agreement to the exclusive jurisdiction of English Courts; and (2) MSI does not plausibly allege a false statement by NSG and, even if it did, does not plausibly allege a "special relationship" between it and NSG as required for a negligent misrepresentation claim.  The Court agrees with NSG.

### a.  Declaratory judgment

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  "Courts have consistently interpreted this permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." <u>Dow Jones & Co. v. Harrods Ltd.</u>, 346 F.3d 357, 359 (2d Cir. 2003). "[T]he primary issues in assessing the appropriateness of declaratory relief are '(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty.'" <u>Chevron Corp. v. Naranjo</u>, 667 F.3d 232, 245 (2d Cir. 2012) (quoting <u>Dow Jones</u>, 346 F.3d at 359).  "[A] complaint is deemed to include any

written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (quotation marks omitted).

MSI's request for declaratory relief concerning the Global Program is not appropriate and will be dismissed as against NSG. Accordingly, and for the same reasons, the Court also dismisses this claim as against MSI-J, and thus, dismisses MSI-J as a third-party defendant in this action. (TPC ¶ 10 (stating "MSI-J[] is solely named in th[e TPC] because, as described below, it is a necessary and indispensable party with respect to the declaratory relief sought").)

First, as the Court explained in dismissing MSI's nearly identical counterclaim against Pilkington, MSI's request is redundant because "Pilkington's nearly identical [and first-filed declaratory judgment] claim already provides the vehicle for the Court to declare all relevant rights and obligations of the parties with respect to the insurance policy in effect at the time of the Tornado," and "in adjudicating whether Pilkington is entitled to the declaratory relief it seeks, MSI will have a full opportunity to make any counterarguments it wants regarding the Global Program." Pilkington, 2020 WL 6585702, at *6.

Second, and equally decisive here, the Master Policy
provides that "[t]his Policy shall be governed by the Laws of
England and except for [arbitration] shall be subject to the
exclusive jurisdiction of the English Courts." (Ex. A to Decl.
of Seth A. Tucker at ECF Page 9 of 10, ECF No. 144-1.)
Accordingly, the Court will not exercise jurisdiction over a
declaratory claim concerning an agreement which expressly
provides that such jurisdiction is vested elsewhere.

### b. Negligent misrepresentation

"To state a claim for negligent misrepresentation under New
York law, the plaintiff must allege that '(1) the defendant had
a duty, as a result of a special relationship, to give correct
information; (2) the defendant made a false representation that
he or she should have known was incorrect; (3) the information
supplied in the representation was known by the defendant to be
desired by the plaintiff for a serious purpose; (4) the
plaintiff intended to rely and act upon it; and (5) the
plaintiff reasonably relied on it to his or her detriment.'"
Anschutz Corp. v. Merrill Lynch & Co., 690 F.3d 98, 114 (2d Cir.
2012) (quoting Hydro Investors, Inc. v. Trafalgar Power Inc.,
227 F.3d 8, 20 (2d Cir. 2000)). "[A] claim for negligent
misrepresentation under New York law cannot lie absent
allegations of direct contact between the plaintiff and maker of
the misrepresentation." Abu Dhabi Com. Bank v. Morgan Stanley &

<u>Co. Inc.</u>, No. 08 Civ. 7508 (SAS), 2013 WL 837536, at *4

(S.D.N.Y. Mar. 6, 2013) (citing <u>Anschutz</u>, 690 F.3d at 115).

MSI's negligent misrepresentation claim against NSG is

essentially identical to its negligent misrepresentation claim

against Aon-UK, and it relies on MSI's assertion that Aon-UK

acted as NSG's broker and agent with respect to the Global

Program.  (TPC ¶¶ 32–36.)  In support of both claims, the TPC

alleges that NSG and Aon-UK failed to exercise reasonable care,

skill, and diligence (1) to accurately convey the terms and

conditions of the coverage to which NSG and its subsidiaries

requested and/or agreed; and (2) to ensure that Pilkington's

insurance policies reflected the terms and conditions negotiated

at the global level.  (<u>Id.</u> ¶¶ 66, 76.)  MSI alleges that NSG and

Aon-UK breached these duties by (1) falsely requesting that the

2016–2017 Global Program and 2016–2017 U.S. Local Policy be

issued with a $15 million sublimit for windstorms in the United

States; and (2) falsely providing "instructions" to Aon-US to

bind coverage under the 2016–2017 U.S. Local Policy with the $15

million Windstorm Sublimit.  (<u>Id.</u> ¶¶ 67, 77.)  MSI asserts that

these acts by NSG and Aon-UK constitute false statements of

which they were or should have been aware because Pilkington now

claims that it did not seek or agree to the $15 million

Windstorm Sublimit.  (<u>Id.</u> ¶¶ 67–68, 77–78.)

MSI fails to allege a plausible negligent misrepresentation claim against NSG (or Aon-UK). First, the TPC provides no factual support for MSI's conclusory assertion that NSG and Aon-UK were or should have been aware that their statements were false. "[A]llegations that are 'conclusory' are 'not entitled to be assumed true[.]'" Lynch, 952 F.3d at 75 (quoting Iqbal, 556 U.S. at 681).

Second, the TPC does not plausibly allege a false statement by NSG (or Aon-UK)—indeed, quite the opposite. As discussed above, MSI's claims center on its allegations that NSG agreed to a master insurance policy with a $15 million windstorm sublimit for Pilkington's 2016–2017 U.S. Local Policy; NSG subsequently empowered Aon-UK to procure that sublimit for Pilkington; and Aon-UK did so by empowering Aon-US to obtain those terms from MSI. Additionally significant, the TPC further alleges that MSI-J similarly transmitted the terms of the Global Program to MSI (TPC ¶ 43), thereby placing MSI on notice before it issued the 2016–2017 U.S. Local Policy that the policy was to include a $15 million windstorm sublimit (id. ¶¶ 47–49, 53, 55). The fact that Pilkington now says it never agreed to that sublimit does not make NSG's initial request for it under the Global Program improper or false where, as MSI alleges, NSG "ha[d] the responsibility to, among other things, arrange property insurance coverage for its subsidiaries worldwide, including

Pilkington[].″  (Id. ¶ 17.)  If, as MSI alleges, NSG had such authority, and NSG in that capacity arranged for a certain windstorm sublimit for Pilkington's policy, NSG's actions on Pilkington's behalf—and by extension Aon-UK's and Aon-US's actions on NSG's behalf—were not false statements of which they should have been aware: NSG, Aon-UK, Aon-US (and MSI-J) each accurately conveyed to MSI the terms agreed to at the global level.  (Id. ¶¶ 53–55 (further alleging that the 2016–2017 U.S. Local Policy was "[i]n accordance with the coverage requested . . . under the Global Program" and "consistent with the coverage provided under the Master Policy for windstorms in the United States every year since 2009").)

Third, MSI does not plausibly allege a special relationship between it and NSG (or Aon-UK).  Not only does MSI fail to allege any direct contact between the two, see Abu Dhabi Com. Bank, 2013 WL 837536, at *4 (dismissing negligent misrepresentation claims where the plaintiffs had no direct contact with the defendant), here, the TPC similarly fails to plausibly allege "a clearly defined set of circumstances which bespeak a close relationship premised on knowing reliance," Cornelia Fifth Ave., LLC v. Canizales, No. 12 Civ. 07660 (ALC), 2017 WL 1034644, at *3 (S.D.N.Y. Mar. 16, 2017) (quotation marks omitted), where MSI received the same information from its parent entity, MSI-J, (TPC ¶ 43).

In sum, MSI's negligent misrepresentation claims are fundamentally and fatally undermined by MSI's own allegations regarding NSG's authority to arrange Pilkington's insurance, the long-standing terms of the Global Program, and MSI's irreconcilable theory of the wrongdoing perpetrated against it. As alleged, Aon-US's request for the $15 Million Windstorm Sublimit may plausibly give rise to a claim against Aon-US where Aon-US, in its capacity as Pilkington's broker of record, requested a policy on Pilkington's behalf with terms that Aon-US—based on its actions in connection with the Endorsement—should have known Pilkington opposed. But that same request by Aon-US cannot be deemed false or tortious where Aon-US was, as MSI argues here, acting as NSG's and Aon-UK's agent because the Global Program—the terms of which NSG had the responsibility to arrange, and which was communicated to MSI by both MSI-J and Aon-UK—included the very sublimit that Aon-US requested. Further, NSG's initial request for the sublimit at the global level, directed to MSI-J in connection with the Master Policy, is not a misrepresentation directed at MSI or one upon which MSI relied—MSI relied on the global agreement, not NSG's initial request. Moreover, any purported falsity of NSG's initial request to MSI-J, and NSG's or Aon-UK's knowledge of such, is not plausibly alleged where the TPC asserts that the relevant terms were consistent every year since 2009. Accordingly, MSI's

negligent misrepresentation claim against NSG (and Aon-UK) fails and must be dismissed.

### 3. The TPC fails to state a claim against Aon-UK

Turning to the sufficiency of MSI's allegations against Aon-UK, the TPC alleges that if MSI is found liable to Pilkington, MSI is entitled to damages from Aon-UK for negligent misrepresentation and contribution. (TPC ¶¶ 71, 74.) As discussed above, MSI asserts that Aon-UK's request for a $15 million windstorm sublimit in Pilkington's 2016–2017 U.S. Local Policy was tortious because Pilkington now asserts that it did not seek or agree to the sublimit. (Id. ¶¶ 67–68.) MSI also seeks contribution from Aon-UK for an equitable pro rata share of any liability MSI may incur to Pilkington on a theory that Aon-UK's actions contributed to Pilkington's loss. (Id. ¶ 74.)

### a. Negligent misrepresentation

As discussed above, MSI fails to plausibly allege a negligent misrepresentation claim against NSG because the TPC is devoid of nonconclusory allegations regarding a false statement or a special relationship between NSG and MSI. The TPC is likewise devoid of such allegations against Aon-UK. Accordingly, MSI's negligent misrepresentation claim against Aon-UK is dismissed for the reasons already stated.

## b. Contribution

As a preliminary matter, the parties dispute which state's law applies to MSI's contribution claim. Aon-UK argues that the claim is subject to the law of Illinois because the "place of injury" (i.e., where the Tornado struck) generally controls. MSI counters that Illinois law does not apply and, instead, the Court should evaluate the claim under New York law because Pilkington has conceded that its injuries are governed by New York law. Setting aside whether Aon-UK is correct that Illinois law applies, even under New York law MSI fails to state a claim for contribution. Accordingly, the Court need not resolve whether the law of a different state applies.

In New York, "two or more persons who are subject to liability for damages for the same personal injury . . . may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought." N.Y. C.P.L.R. § 1401. "The critical requirement for a contribution claim under New York law is that the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought. A third-party defendant may be liable for contribution where it breaches a duty to either (a) the third-party plaintiff seeking contribution or (b) the first-party plaintiff seeking redress for the underlying tort."

Fernandez v. New England Motor Freight, Inc., No. 12 Civ. 6536
(VEC), 2015 WL 4002233, at *5 (S.D.N.Y. July 1, 2015) (brackets,
citations, and internal quotation marks omitted).  As MSI's
opposition notes, contribution "requires that each party 'owed a
duty to plaintiff or to each other and by breaching their
respective duties they contribute to plaintiff's ultimate
injuries.'"  (Opp'n at 24 (quoting Trustees of Columbia Univ. v.
Mitchell/Giurgola Assoc., 109 A.D.2d 449, 454 (1st Dep't 1985))
(brackets omitted), ECF No. 188.)

As discussed above, MSI fails to plausibly allege a special
relationship between itself and Aon-UK, nor any false statements
by Aon-UK.  Accordingly, MSI's contribution claim fails under
New York law—MSI's chosen law—because MSI does not plausibly
allege a duty Aon-UK owed to it or Pilkington, nor breach of any
such duty if one existed.  As explained above, the TPC alleges
that Aon-UK accurately conveyed to MSI (via Aon-US) the terms
requested by Aon-UK's client, NSG, which terms were memorialized
in the Master Policy between NSG and MSI-J.  Pilkington's
subsequent claim that it did not knowingly consent to the $15
million windstorm sublimit does not retroactively make Aon-UK's
actions a breach of a purported duty owed to MSI; Aon-UK
fulfilled its duties.  Likewise, Pilkington's subsequent claim
does not establish that Aon-UK breached—or even owed—a duty to
Pilkington where the TPC is devoid of any allegations regarding

a relationship, special or otherwise, between Aon-UK and
Pilkington.  Indeed, Pilkington's claims arise out of its
assertion that MSI perpetrated a fraud against it by means of
the Endorsement—but neither Aon-UK nor NSG were involved in
those negotiations nor did either have reason to suspect that
Pilkington had been misled by MSI.  Further, MSI's allegations
that NSG had the responsibility to arrange Pilkington's
insurance, and the relevant sublimit in the Master Policy was
consistent since 2009, cuts against any inference of an
imputable breach by NSG of a duty owed to Pilkington.
Accordingly, MSI's contribution claim fails and must be
dismissed.

   **III.  MSI's Request for Leave to Amend**

   Federal Rule of Civil Procedure 15 instructs courts to
"freely give leave" to amend "when justice so requires." Fed. R.
Civ. P. 15(a)(2).  Amendment is not warranted, however, "absent
some indication as to what [a plaintiff] might add to [its]
complaint in order to make it viable." Shemian v. Research In
Motion Ltd., 570 F. App'x 32, 37 (2d Cir. 2014) (summary order)
(quoting Horoshko v. Citibank, N.A., 373 F.3d 248, 249 (2d Cir.
2004) (per curiam)); see also ICD Cap., LLC v. CodeSmart
Holdings, Inc., No. 14 Civ. 8355 (JFK), 2020 WL 3961617, at *10
(S.D.N.Y. July 13, 2020) (dismissing complaint after giving
plaintiffs an opportunity to demonstrate how they would make

their pleading viable), <u>aff'd</u>, 842 F. App'x 705 (2d Cir. 2021).
Accordingly, should MSI wish to amend the TPC to salvage its
questionable claims against NSG or Aon-UK, MSI must demonstrate
how it will cure its pleading deficiencies by filing (1) a
proposed amended third-party complaint and (2) a memorandum of
law of no more than 10 pages explaining how the proposed amended
third-party complaint would survive a comparable motion to
dismiss brought by NSG and/or Aon-UK.  Such demonstration by
MSI, if it elects to do so, must be filed within 14 days of the
date of this Opinion & Order.  NSG's and/or Aon-UK's opposition
briefs of no more than 13 pages, if any, are due no later than
14 days after MSI's papers are filed.  MSI's reply briefs of no
more than five pages each, if any, are due no later than seven
days after NSG's and/or Aon-UK's oppositions are filed.

**IV.  Conclusion**

For the reasons set forth above, Aon UK Limited's motion to
dismiss third-party claims brought by Mitsui Sumitomo Insurance
Company of America is GRANTED; Nippon Sheet Glass Co., Ltd.'s
similar motion to dismiss is also GRANTED.  Further, and for the
same reasons, MSI's third-party claim against Mitsui Sumitomo
Insurance Co. Ltd. is likewise dismissed.  Accordingly, MSI-J is
DISMISSED from this action as well.

The Clerk of Court is directed to terminate the motions docketed at ECF Nos. 186 and 210.

**SO ORDERED.**

Dated:    New York, New York
            May 19, 2021

John F. Keenan
United States District Judge