USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED  10/27/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------- X
PILKINGTON NORTH AMERICA, INC.,          :

              Plaintiff,                  :          No. 18 Civ. 8152 (JFK)

  -against-                               :          **OPINION & ORDER**

MITSUI SUMITOMO INSURANCE COMPANY        :
OF AMERICA and AON RISK SERVICES          :
CENTRAL, INC.,                            :

              Defendants.                 :
----------------------------------- X
MITSUI SUMITOMO INSURANCE COMPANY        :
OF AMERICA,                               :

              Third-Party Plaintiff,     :

  -against-                               :

AON UK LIMITED and NIPPON SHEET          :
GLASS CO. LTD.,                           :

              Third-Party Defendants.    :
----------------------------------- X

APPEARANCES

FOR DEFENDANT/THIRD-PARTY PLAINTIFF MITSUI SUMITOMO INSURANCE
COMPANY OF AMERICA:
     Brian E. O'Donnell, RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
     Kevin J. Orsini, Michael P. Addis, CRAVATH, SWAINE & MOORE LLP

FOR THIRD-PARTY DEFENDANT AON UK LIMITED:
     Robert B. Ellis, Michael S. Biehl, Lauren Casazza,
     Kelsey Bleiweiss, KIRKLAND & ELLIS LLP

FOR THIRD-PARTY DEFENDANT NIPPON SHEET GLASS CO. LTD.:
     Marc L. Abrams, Andre K. Cizmarik, Whitney M. Costin,
     MINTZ, LEVIN, COHN, FERRIS, GLOVSKY and POPEO, P.C.

1

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Defendant and Third-Party Plaintiff, Mitsui Sumitomo Insurance Company of America's ("MSI" or "MSI-US") request for leave to amend its Third-Party Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).  On May 19, 2021, this Court granted motions by Third Party Defendants, Nippon Sheet Glass Co., Ltd. ("NSG") and Aon UK Limited ("Aon-UK"), to dismiss MSI's original Third-Party Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The May 19, 2021 Opinion & Order ("the May 19 Order"), however, permitted MSI to seek leave of the Court to amend its third-party claims.  Both NSG and Aon-UK oppose MSI's present request and argue that leave should be denied.

For the reasons set forth below, MSI's request for leave to amend is GRANTED.

## I. Background

### A. Overview

This action arises out of an approximately $60 to $100 million loss that Pilkington incurred when a tornado ("the Tornado") struck its glass manufacturing factory in Ottawa, Illinois on or around February 28, 2017.  Pilkington seeks compensation for the loss pursuant to a commercial property and business interruption insurance policy that was issued by MSI to NSG Holding USA II, Inc., a division of Pilkington's Japanese

2

parent company, NSG (together with Pilkington and NSG's other subsidiaries, "the NSG Group").

Pilkington initiated this action seeking damages or indemnification from MSI for the loss caused by the Tornado because, Pilkington alleges, MSI misrepresented certain changes it proposed and incorporated into Pilkington's insurance policy ("the U.S. Local Policy" or "the Policy") which was in effect the year prior to the Tornado ("the 2015–2016 U.S. Local Policy").  Pilkington alleges that, in 2015, MSI misleadingly requested various revisions to the then-active 2015–2016 U.S. Local Policy from MSI's co-defendant in this action, Aon Risk Services Central, Inc. ("Aon-US"), who served as Pilkington's insurance broker.

In addition to its claims against MSI, Pilkington seeks damages from Aon-US for failing to notify it that one component of MSI's proposal ("the Endorsement") materially changed the wording of a sublimit applicable to certain types of windstorms, thereby substantially reducing coverage for events like the Tornado.  The gravamen of Pilkington's case centers on MSI's alleged misrepresentation of the impact of the Endorsement and Aon-US's alleged negligence in recommending the Endorsement to Pilkington and incorporating the terms of the Endorsement into

the following year's policy ("the 2016–2017 U.S. Local Policy"), which was in effect when the Tornado struck.

On September 6, 2018, Pilkington filed a complaint against MSI and Aon-US.  MSI and Aon-US subsequently moved to dismiss Pilkington's complaint, after which Pilkington filed an amended complaint ("the AC") on December 2, 2019.  The AC asserts five claims against MSI for reformation of contract, breach of contract, declaratory relief, breach of the implied duty of good faith and fair dealing, and equitable estoppel.  The AC also asserts four claims against Aon-US for breach of contract, negligence, negligent misrepresentation, and breach of fiduciary duty.[1]  On May 18, 2020, the Court denied a motion by MSI to dismiss the amended complaint in its entirety.  See Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am., 460 F. Supp. 3d 481, 492–500 (S.D.N.Y. 2020).  The Court ordered the parties to proceed to discovery under the supervision of Magistrate Judge Fox and to join any additional parties by June 15, 2020.  See id. at 502.

As relevant here, on June 15, 2020, MSI filed its original Third-Party Complaint against Aon-US's affiliate in the United Kingdom, Aon-UK, Pilkington's Japanese parent, NSG, and MSI's

---

[1] The AC also asserted an intentional misrepresentation claim against Aon-US, however, on May 18, 2020, the Court dismissed that claim with prejudice.  See Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am., 460 F. Supp. 3d 481, 502 (S.D.N.Y. 2020).

Japanese parent, Mitsui Sumitomo Insurance Co. Ltd.   ("MSI-J").
(Third-Party Compl., ECF No. 115.)   In the original Third-Party
Complaint, MSI sought two forms of relief.   First, MSI sought a
declaration from this Court that the $15 million sublimit
contained in the 2016-2017 "Global Program," a master insurance
policy between NSG and MSI-J, applied to all windstorm loses in
the United States.   (Id. ¶ 90.)   Second, MSI claimed that if
Pilkington prevails in the underlying action, it is entitled to
compensatory damages from NSG and Aon-UK for alleged
misrepresentations and breaches of fiduciary duties owed to MSI
and/or Pilkington.   (Id. ¶ 8.)   On December 8, 2020, and
February 3, 2021, respectively, Aon-UK and NSG moved to dismiss
MSI's third-party claims pursuant to Federal Rules of Civil
Procedure 12(b)(2) and 12(b)(6).   (ECF Nos. 186, 187, 210, 211.)
MSI opposed both motions and requested that it be permitted to
amend its Third-Party Complaint in the event the Court granted
the motions to dismiss.   (ECF No. 213.)

On May 19, 2021, the Court granted NSG's and Aon-UK's
motions to dismiss the Third-Party Complaint pursuant to Rule
12(b)(6).   See Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins.
Co. of Am., No. 18 Civ. 8152 (JFK), 2021 WL 2000371, at *1
(S.D.N.Y. May 19, 2021).   As to both Third-Party Defendants, the
Court found that the original Third-Party Complaint failed to
state a claim upon which relief could be granted.   See id. at

14.  The May 19 Order further stated that should MSI wish to move to amend its Third-Party Complaint, it must provide the Court with (1) a proposed amended third-party complaint, and (2) a memorandum of law explaining how the proposed amended complaint would survive a motion to dismiss brought by Aon-UK and NSG.  See id. at 13.

### B.  MSI's Proposed Amended Third-Party Complaint

On June 6, 2021, MSI filed a proposed Amended Third-Party Complaint ("ATPC") and a Memorandum of Law in accordance with the Court's May 19 Order.[2]  (MSI's Mem. of Law, ECF No. 234.)  In its Memorandum of Law, MSI requests leave to amend its original Third-Party Complaint to assert a single claim against NSG and Aon-UK for breach of the implied warranty of authority.  (Id.) In the ATPC, MSI states that the new breach of implied warranty claim is brought "as an alternative ground for relief in the event that a fact-finder (i) finds that Pilkington-US had the authority to negotiate its own insurance sublimits and to reject the $15 million sublimit for US Windstorms in the Master Policy

---

[2] Although MSI did not file a separate motion to amend, the Court considers MSI's Memorandum of Law and proposed Amended Third-Party Complaint to be a formal request for leave to amend pursuant to Federal Rule of Civil Procedure 15(a).  See Porat v. Lincoln Towers Cmty. Ass'n, 464 F.3d 274, 276 (2d Cir. 2006) ("[W]here a plaintiff clearly has expressed a desire to amend, a lack of a formal motion is not a sufficient ground for a district court to dismiss without leave to amend"); see also Krulewich v. Covidien, LP, 498 F. Supp. 3d 566, 584 n.2 (S.D.N.Y. 2020) (noting that a formal request for leave to amend "require[s] submission of a Proposed . . . Amended Complaint").

that NSG[] and Aon-UK represented would bind Pilkington-US, and
(ii) determines that MSI-US is liable for damages." (ATPC ¶ 19,
ECF No. 235.)  The ATPC alleges that MSI "relied on NSG[]'s and
Aon-UK's representations that NSG[] and Aon-UK had the authority
to bind the NSG Group Companies to the sublimits in the Master
Policy [and,] [i]n reliance on those representations, MSI
reasonably believed that Pilkington was bound to the sublimits
in the 2016-2017 Master Policy, as incorporated into the 2016-
2017 U.S. Local Policy . . . ." (MSI's Mem. of Law at 1.)

In support of MSI's new third-party claim, the ATPC alleges
the following facts, which, at this procedural stage of the
litigation, the Court presumes to be true. See Aetna Cas. &
Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 604 (2d Cir.
2005).

MSI is an insurance company organized under the laws of New
York and licensed to transact business in New York. (ATPC ¶
20.)  MSI's statutory home office is also located in New York.
(Id.)  MSI-J is a Japanese insurance company with a principal
place of business in Tokyo, Japan. (Id. ¶ 21.)  Aon-UK is a
foreign corporation with a principal place of business in
London, England. (Id. ¶ 22.)  Aon-UK and Aon-US are
"affiliates" of one another, however, the ATPC implies that Aon-
UK directs and oversees Aon-US with respect to the Global
Program. (Id. ¶ 22.)  Aon-US is an Illinois insurance broker.

(Id. ¶ 38.)  Pilkington is a Delaware manufacturer and a wholly owned subsidiary of NSG, which is a foreign corporation with a principal place of business in Tokyo, Japan.  (Id. ¶ 3.)  The ATPC alleges that NSG is responsible for, among other things, arranging property insurance coverage for its subsidiaries worldwide, including Pilkington.  (Id. ¶¶ 6, 7.)

The insurance policy at the heart of this dispute, the 2016-2017 U.S. Local Policy, was issued as a part of a long-standing and comprehensive global risk transfer program ("the Global Program") involving NSG, Aon-UK, and MSI-J.  (Id. ¶ 48.) The Global Program was developed and marketed by Aon-UK, and it consisted of the following interrelated contracts, which were designed to enable the NSG Group to save money by self-insuring many of NSG's business operations:

1) a "Master Policy" issued to NSG by MSI-J, which provided direct coverage in jurisdictions where MSI-J was authorized to transact insurance business, and supplemental coverage in jurisdictions where MSI-J was not authorized to transact business directly;

2) "Local Policies" issued by MSI-J's affiliates—such as its United States affiliate, MSI or MSI-US—where MSI-J was not authorized to transact insurance business directly;

3) a "Reinsurance Program" designed to indemnify MSI-J for certain liabilities resulting from its participation in the Global Program; and

4) a "Captive Insurance Company" that was ultimately owned and controlled by NSG, and which participated in reinsuring MSI-J.  (Id. ¶ 49.)

Aon-UK acted as NSG's agent and was its broker of record with respect to the Global Program.  (Id. ¶¶ 32-33.)  In that capacity, Aon-UK operated at the center of the program and prepared relevant materials related to the Master and Local Policies, negotiated the terms and conditions of the Global Program with MSI-J, and ensured consistent global coverage for the NSG Group by, among other things, reviewing local policies to ensure they reflected the terms and conditions negotiated at the global level.  (Id. ¶¶ 32-36.)  Aon-UK was also responsible for structuring and marketing the Reinsurance Program.  (Id. ¶ 36.)  Aon-UK received annual commissions for its roles in placing the insurance and reinsurance components of the Global Program.  (Id. ¶ 37.)

Each year, NSG, Aon-UK, and MSI-J negotiated the material terms, conditions, sublimits, and premiums of the various policies within the Global Program.  (Id. ¶ 54.)  Once these terms were settled, Aon-UK and MSI-J transmitted the information to their local affiliates, such as Aon-US and MSI-US.  (Id. ¶ 76.)  Based on "instructions" provided by Aon-UK, Aon-US provided MSI-US with a so-called "market submission," which requested terms of coverage under the U.S. Local Policy for NSG companies.  (Id. ¶ 78.)  Thereafter, MSI-US provided Aon-US with a quotation of coverage for the U.S. Local Policy, which Aon-US

reviewed and reconciled with its instructions from Aon-UK before
asking MSI-US to issue the coverage.  (Id. ¶ 79.)

The ATPC alleges that since the beginning of the Global
Program in 2009, NSG and Aon-UK have represented to MSI-J that
they have the authority to bind all NSG Group Companies,
including Pilkington, to the insurance sublimits of the Master
Policy.  (Id. ¶¶ 10, 28, 67-72.)  The 2016-2017 Master Policy,
for example, listed Pilkington's Ottawa, Illinois facility—the
property at the heart of this dispute—on a list of properties
insured under the Master Policy.  (Id. ¶ 71.)  The ATPC further
alleges that NSG and Aon-UK, acting through its agent, Aon-US,
represented to MSI-US that Aon-US had the authority to bind
Pilkington to the sublimits set out in the 2016-2017 Master
Policy through the incorporation of those sublimits into the
2016-2017 U.S. Local Policy.  (Id. ¶¶ 87-92.)

As relevant here, the 2016-2017 Master Policy was in effect
when the Tornado struck Pilkington's glass manufacturing
facility in Ottawa, Illinois.  (Id. ¶¶ 94-98.)  According to the
ATPC, the parties intended for the Master Policy to set the
outer boundary of coverage available to the NSG Group under the
Global Program, and for the terms and conditions of the Local
Policies—such as the U.S. Local Policy at issue here—to mirror
those of the Master Policy.  (Id. ¶¶ 61-62, 80.)  The proposed
ATPC further alleges that the U.S. Local Policy specified that

its limits and coverages depended on, and were restricted by,
the limits and coverages of the Master Policy.  (Id. ¶ 81.)

After the discussions between MSI-US and Aon-US regarding
the Endorsement, and around the time in January 2016 when the
Endorsement was incorporated into Pilkington's then-active 2015–
2016 U.S. Local Policy,[3] Aon-UK prepared and transmitted to MSI-J
the 2016-2017 Global Market Submission for the 2016-2017 Global
Program.  (Id. ¶ 87.)  Aon-UK's submission requested a $15
million sublimit for all windstorm losses in the United States
and specified that local policies should be issued with similar
coverage.  (Id. ¶ 85.)

On or around March 2016, Aon-US prepared and submitted a
Local Market Submission for the 2016-2017 U.S. Local Policy to
MSI-US.  (Id. ¶ 87.)  In accordance with the terms agreed to at
the global level, Aon-US's submission requested a $15 million
windstorm sublimit ("the Windstorm Sublimit").  (Id.)  Based on
the submission, MSI's New York-based underwriter provided Aon-US

---

[3] The ATPC does not include allegations regarding the Endorsement.
Nevertheless, these facts appear at paragraphs 46 through 56 of MSI's
Amended Counterclaims & Crossclaims. (ECF No. 116.)  The Court, as it
did in the May 19 Order, includes these allegations concerning the
Endorsement in order to provide a reasonable and candid summary of
MSI's allegations in this action.  (See MSI's Reply to Aon-UK's Opp'n
at 2 n.3 (citing Pilkington's Amended Complaint), ECF No. 239.)
Further, these facts are central to Pilkington's claim for relief from
MSI, upon which the ATPC relies heavily in asserting MSI's rights to
relief from NSG and Aon-UK.  Accord Chambers v. Time Warner, Inc., 282
F.3d 147, 152-53 (2d Cir. 2002) (explaining a complaint may be deemed
to include any statements or documents incorporated in it by
reference).

with a quote for the requested coverage.  (Id. ¶ 88; Ex. 7 to
ATPC, ECF No. 235-7.)  Approximately three days later, Aon-US
requested that MSI's New York-based underwriter "please proceed
with policy issuance," explaining "[w]e have reconciled your
quote with our instructions from U.K."  (Id. ¶ 89; Ex. 9 to
ATPC, ECF No. 235-9.)

In accordance with the coverage requested under the Global
Program, and the information contained in Aon-US's market
submission, MSI-US issued, from its New York office, the 2016–
2017 U.S. Local Policy with the $15 million Windstorm Sublimit.
(ATPC ¶¶ 90–91.)  The ATPC alleges that these terms were
consistent with the coverage provided under the Master Policy
for windstorms in the United States every year since 2009, the
first year the MSI group of companies participated in the Global
Program.  (Id. ¶ 92.)  Likewise, the reinsurance coverage
procured by Aon-UK for windstorm losses in the United States
under the 2016–2017 Global Program was subject to a $15 million
limit, which was consistent with the reinsurance coverage
obtained by Aon-UK for windstorms in the United States every
year since 2009.  (Id. ¶ 93.)

On February 28, 2017, the Tornado struck Pilkington's
facility.  (Id. ¶ 94.)  Pilkington subsequently provided MSI-US
with a notice of damages, claiming total losses of between $60
million and $100 million.  (Id. ¶¶ 95–96.)  MSI-US determined

that the $15 million Windstorm Sublimit applied and paid
Pilkington that amount, after which Pilkington initiated this
action to recover the balance of its losses because, Pilkington
asserts, it did not request or agree to a $15 million sublimit
applicable to windstorms such as the Tornado.  (Id. ¶ 101.)
Rather, Pilkington argues, MSI defrauded it (and Aon-US) into
accepting the Endorsement's revisions to the windstorm sublimit
in Pilkington's 2015-2016 U.S. Local Policy, and Aon-US
subsequently and inexcusably incorporated those same
fraudulently revised terms into the 2016-2017 U.S. Local Policy.
See Pilkington, 460 F. Supp. 3d at 488.

## II.  MSI's Request for Leave to Amend

As noted previously, MSI seeks leave to amend its Third-
Party Complaint to assert an entirely new claim for breach of
the implied warranty of authority.  The proposed ATPC alleges
that, if Pilkington prevails in the underlying proceeding and a
fact-finder concludes that Pilkington was not bound by the U.S.
Windstorm sublimit of the 2016-2017 Master Policy, Aon-UK and
NSG are liable to MSI for breach of the implied warranty of
authority.  (ATPC ¶ 104.)  On June 16, 2021, both Aon-UK and NSG
filed Memorandum of Law opposing MSI's request for leave to
amend.  (ECF Nos. 237, 238.)  MSI filed replies to both
oppositions.  (ECF Nos. 239, 240.)

## A. Legal Standard

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a pleading should "be freely given when justice so requires." Fed. R. Civ. P. 15 (a)(2); see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC., 797 F.3d 160, 190 (2d Cir. 2015). The Second Circuit has repeatedly recognized that "[t]his is a 'liberal' and 'permissive' standard, and the only 'grounds on which denial of leave to amend has long been held proper' are upon a showing of 'undue delay, bad faith, dilatory motive, [or] futility.'" Sacerdote v. New York Univ., 9 F.4th 95, 115 (2d Cir. 2021) (quoting Loreley Fin., 797 F.3d at 190).

Consistent with the liberal principles underlying Rule 15(a)(2), the party opposing the amendment has the burden of establishing that leave to amend would be unduly prejudicial or futile. See Ho Myung Moolsan Co. v. Manitou Min. Water, Inc., 665 F. Supp. 2d 239, 250 (S.D.N.Y. 2009). The movant, however, bears the burden of explaining any undue delay in the filing of the proposed amendment. See MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc., 157 F.3d 956, 962 (2d Cir. 1998). As is the case when considering a motion to dismiss under Rule 12(b)(6), the Court is required to "accept the facts alleged by the party seeking to amend as true and construe them in the light most

favorable to that party." <u>Aetna Cas. & Sur. Co. v. Aniero Concrete Co.</u>, 404 F.3d 566, 604 (2d Cir. 2005).

### B. Discussion

NSG and Aon-UK each assert various arguments in opposition to MSI's request for leave to amend.  Generally, both Third-Party Defendants argue that MSI's request should be denied because (1) the Court's May 19 Order did not authorize MSI to bring a new claim in its amended complaint, (2) MSI unduly delayed the filing of its new claim, (3) the ATPC would unduly prejudice both Third-Party Defendants, and (4) MSI's implied warranty of authority claim is futile.  Aon-UK separately argues that, as a threshold matter, the heightened "good cause" standard of Rule 16(b)(4) of the Federal Rules of Civil Procedure applies to the Court's consideration of MSI's request to amend.  For the reasons set forth below, the Court finds each of these arguments unpersuasive and insufficient to overcome Rule 15(a)(2)'s directive to "freely give leave when justice so requires."

### 1. The "permissive" standard of Rule 15(a)(2) applies

Contrary to Aon-UK's initial argument, Rule 16(b)(4) has no bearing on the Court's consideration of MSI's request.  In <u>Parker v. Columbia Pictures Indus.</u>, 204 F.3d 326, 340 (2d Cir. 2000), the Second Circuit recognized that "the Rule 16(b) 'good

15

cause' standard, rather than the more lenient standard of Rule
15(a), governs a motion to amend filed after the deadline a
district court has set for amending the pleadings."  Relying on
Parker, Aon-UK argues that MSI must demonstrate good cause for
its proposed amendment because MSI's request to amend was filed
after a deadline for amendments set by the Court.

The Court's relevant scheduling order, however, set no such
deadline.  The June 22, 2020 Case Management Plan and Scheduling
Order ("the Scheduling Order") prohibited the parties from
amending their pleadings "except as provided under the [Federal
Rules of Civil Procedure]."  (ECF No. 126.)  The Scheduling
Order did not set a final deadline for the filing of amendments
and, as a result, MSI was free to seek the Court's leave to
amend its Third-Party Complaint pursuant to Rule 15(a)(2) on
June 2, 2021.  See Fed. R. Civ. P. 15(a)(2); see also Sacerdote,
9 F.4th at 115 (holding district court improperly applied Rule
16(b) standard when scheduling order did not "set [an]
expiration date after which all amendments were prohibited . .
.").  Accordingly, the more lenient standard of Rule 15(a)(2)
governs the Court's consideration of MSI's request for leave to
amend.

### 2. **MSI's ATPC complies with the Court's May 19 Order**

Aon-UK and NSG both argue that MSI's request should be denied because the ATPC violates the Court's May 19 Order. Specifically, the Third-Party Defendants contend that the Order only permitted MSI to re-plead the claims it raised in the original Third-Party Complaint and "did not authorize MSI to assert new claims against Aon-UK [and NSG]." (Aon-UK's Opp'n. at 7.) This argument misinterprets the Court's May 19 Order.

As the language of the Order makes clear, the Court did not impose a limitation on the substance of MSI's proposed amendment. Instead, the Order directed MSI to "demonstrate how it will cure its pleading deficiencies" and "explain[] how the proposed amended third-party complaint would survive a comparable motion to dismiss . . . ." Pilkington, 2021 WL 2000371, at *13. The Order did not confine MSI to the claims it raised in the original Third-Party Complaint. Furthermore, MSI did not need the Court's authorization to assert a new claim in the ATPC. See Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc., No. 19 Civ. 7998 (VEC), 2021 WL 240737, at *2 (S.D.N.Y. Jan. 25, 2021) ("Although the Court did not expressly grant Plaintiff leave to assert a new claim, Rule 15(a)(2) requires that leave to amend be freely given"). Aon-UK's and NSG's

procedural objection to MSI's proposed amendment, therefore, fails.

### 3. Undue Delay

NSG and Aon-UK next argue that the Court should deny MSI's request for leave because MSI unduly delayed pursuing its new breach of implied warranty claim.  The Third-Party Defendants contend that MSI has failed to adequately explain its delay, "especially considering [the] implied warranty claim is predicated entirely on facts known to MSI[] since this dispute arose in 2017."  (NSG's Opp'n at 4.)  The Court disagrees.

As noted previously, "[t]he burden to explain a delay is on the party that seeks leave to amend."  MacDraw, Inc., 157 F.3d at 962.  "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."  State Tchrs. Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981).  Thus, "[a]lthough some explanation must be provided to excuse a delay . . . even vague or 'thin' reasons are sufficient, in the absence of prejudice or bad faith."  Duling v. Gristede's Operating Corp., 265 F.R.D. 91, 97-98 (S.D.N.Y. 2010) (citations omitted).

In support of its request for leave to amend, MSI contends that it did not unduly delay the filing of the proposed amendment.  (MSI's Mem. of Law at 10.)  MSI notes that it first requested to amend the original Third-Party Complaint in its

December 8, 2020 opposition to Aon-UK's motions to dismiss.
(Id.)  MSI then renewed its request pursuant to the Court's May
19 Order and filed a memorandum of law and proposed ATPC
fourteen days after the Court dismissed the original Third-Party
Complaint.  (Id.)

As MSI acknowledges, the ATPC would assert a new claim
against the Third-Party Defendants a year after the original
Third-Party Complaint was filed.  Courts throughout this
Circuit, however, have routinely "permitted [parties] to amend
their pleadings to assert new claims long after they acquired
the facts necessary to support those claims."  Richardson
Greenshields Sec., Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir.
1987); see also Dilworth v. Goldberg, 914 F. Supp. 2d 433, 460
(S.D.N.Y. 2012) ("[T]he motion to amend will not be denied by
reason of plaintiffs' delay in alleging facts that were
previously within their knowledge").  Furthermore, MSI's delay
in filing the instant motion "is no greater . . . than in many
cases in which amendments to the pleadings have been allowed."
Lau, 825 F.2d at 653 n.6 (collecting cases where leave to amend
was granted after delays ranging from two to five years).

Finally, to the extent that either NSG or Aon-UK suggest
that MSI's delay was tactical, they provide no evidence of bad
faith or dilatory purpose.  This is not a case where the moving
party "waited until judgment was entered dismissing its

19

complaint before seeking leave to amend." State Trading Corp.
of India v. Assuranceforeningen Skuld, 921 F.2d 409, 418 (2d
Cir. 1990).  Because MSI's delay in pursuing its new breach of
warranty claim was not substantial and neither Third-Party
Defendant has provided evidence of bad faith, MSI's delay is not
fatal to its request for leave to amend.

### 4. Undue prejudice to opposing parties

Aon-UK and NSG also argue that the Court should deny MSI
leave to amend because they would be unduly prejudiced by the
proposed amendment.  The Third-Party Defendants contend that if
MSI is permitted to amend its Third-Party Complaint, they will
be required to engage in additional discovery that will
necessarily delay the resolution of this litigation.  In
response, MSI argues that neither Aon-UK nor NSG would be
prejudiced by the ATPC because the proposed amendment is based
on the same factual allegations contained in the original Third-
Party Complaint.

In determining whether a proposed amendment will result in
undue prejudice, courts "generally consider whether the
assertion of the new claim or defense would '(i) require the
opponent to expend significant additional resources to conduct
discovery and prepare for trial; [or] (ii) significantly delay
the resolution of the dispute.'" Monahan v. New York City Dep't
of Corr., 214 F.3d 275, 284 (2d Cir. 2000) (quoting Block v.

First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)).  "The
fact that a proposed amendment would add new issues is normally
not prejudicial unless the opposing party would be confronted
with some unique difficulty in defending against the new
issues."  Duling, 265 F.R.D. at 102; see also Cruz v. Coach
Stores, Inc., 202 F.3d 560, 569 (2d Cir. 2000) ("[I]n opposing a
Rule 15(b) amendment, a party cannot normally show that it
suffered prejudice simply because of a change in its opponent's
legal theory" (internal quotation marks omitted)).

    The Third-Party Defendants' argument concerning prejudice
focuses primarily on the prospect of increased costs and further
delays in the resolution of this litigation.  Aon-UK and NSG
argue that if MSI's request to amend is granted, the parties
will be required to re-open negotiations concerning document
production and the deadline for discovery, which is currently
set for February 7, 2022, will be pushed back yet again.  (ECF
No. 126.)  Although Aon-UK and NSG are likely correct in that
additional discovery will be necessary, neither party has
demonstrated that the resulting prejudice "warrant[s] a
deviation from the rule broadly allowing amendment to
pleadings."  Monahan, 214 F.3d at 284.

    First, the prospect of additional discovery is not
sufficiently prejudicial to justify denying MSI's request for
leave to amend.  At this time, no trial date has been set in the

underlying litigation and discovery is still on going.  See A.V.
by Versace, Inc. v. Gianni Versace S.p.A., 87 F. Supp. 2d 281,
299 (S.D.N.Y. 2000) (granting motion to amend where trial date
had not been set and discovery had not been completed); see also
Scott v. Chipotle Mexican Grill, Inc., 300 F.R.D. 193, 200
(S.D.N.Y. 2014) (noting that "[a] court is more likely to find
an amendment prejudicial if discovery has closed").  Although
the ATPC would likely require discovery beyond the current
deadline, it should not significantly delay the resolution of
this litigation.

Second, MSI's proposed breach of warranty claim involves
the same factual allegations that were contained in the original
Third-Party Complaint.  When considering the prospect of
prejudice, courts in this Circuit focus on "the extent to which
the new claims arise from the existing ones and whether a party
had prior notice of the new claim".  Lickteig v. Cerberus Cap.
Mgmt., L.P., No. 19 Civ. 5263 (GHW), 2020 WL 7629876, at *4
(S.D.N.Y. Dec. 22, 2020); see also Monahan, 214 F.3d at 284.
"This is because 'prejudice occurs if the opposing party would
experience undue difficulty in defending a lawsuit because of a
change in tactics or theories on the part of the movant.'"
Agerbrink v. Model Serv. LLC, 155 F. Supp. 3d 448, 455 (S.D.N.Y.
2016) (quoting Henry v. Murphy, No. M-82, 2002 WL 24307, at *2
(S.D.N.Y. Jan. 8, 2002), aff'd, 50 F. App'x 55 (2d Cir. 2002)).

Here, MSI's new claim is based on the same factual allegations that were included in the original Third-Party Complaint. Aon-UK and NSG, therefore, had prior notice of the facts underlying the breach of warranty claim that MSI now hopes to assert. See A.V. by Versace, Inc., 87 F. Supp. 2d at 299 (finding no undue prejudice where proposed amendments "do not raise factual claims unrelated to the events its original third-party complaint").

Finally, the Third-Party Defendants' claim regarding the cost of additional discovery is insufficient to justify denial of MSI's request. Although some additional discovery will be necessary, the fact "that an amendment will require the expenditure of additional time, effort, or money [does] not constitute 'undue prejudice.'" Id. (quoting Block, 988 F.2d at 351); see also U.S. For & on Behalf of Mar. Admin. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago, 889 F.2d 1248, 1255 (2d Cir. 1989) (noting an "adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading"). Accordingly, Aon-UK and NSG have failed to establish that they will suffer undue prejudice as a result of MSI's proposed amendment.

### 5. Futility

The Third-Party Defendants' principal argument in opposition to MSI's request for leave to amend is that the ATPC would not survive a motion to dismiss and is, therefore, futile.

Aon-UK and NSG first argue that the ATPC fails to state a claim
for breach of the implied warranty of authority because the ATPC
does not allege several necessary elements of the claim.
Second, Aon-UK and NSG contend that MSI's breach of warranty
claim cannot be brought in the alternative because a judgment in
favor of Pilkington requires a finding that MSI acted
fraudulently.  The Third-party Defendants argue that such a
conclusion would effectively preclude MSI from claiming that it
relied on allegedly false representations of authority made by
both Third-Party Defendants.  Finally, NSG separately argues
that the ATPC is futile because the Court lacks personal
jurisdiction over it for purposes of the new breach of implied
warranty claim.  The Court will address each of these claims in
turn.

&ldquo;An amendment to a pleading is futile if the proposed claim
could not withstand a motion to dismiss pursuant to Fed. R. Civ.
P. 12(b)(6).&rdquo;  Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243,
258 (2d Cir. 2002).  Accordingly, an amended complaint must
contain sufficient facts to &ldquo;state a claim to relief that is
plausible on its face.&rdquo;  Bell Atl. Corp. v. Twombly, 550 U.S.
544, 570 (2007).  A claim is facially plausible when a
&ldquo;plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged.&rdquo;  Ashcroft v. Iqbal, 556 U.S. 662, 678

24

(2009).  The plausibility standard "does not impose a
probability requirement at the pleading stage; it simply calls
for enough fact to raise a reasonable expectation that discovery
will reveal evidence of illegal" conduct.  Twombly, 550 U.S. at
545.

A court's role on a motion to dismiss is "not to weigh the
evidence that might be presented at trial but merely to
determine whether the complaint itself is legally sufficient."
Ainette v. Mkt. Basket Inc., No. 19 Civ. 04506 (DF), 2021 WL
1022590, at *7 (S.D.N.Y. Mar. 16, 2021) (quoting Kopec v.
Coughlin, 922 F.2d 152, 155 (2d Cir. 1991)).  Under this
standard, the issue "is not whether a plaintiff will ultimately
prevail but whether the claimant is entitled to offer evidence
to support the claims."  PharmacyChecker.com, LLC v. Nat'l Ass'n
of Boards of Pharmacy, No. 19 Civ. 7577 (KMK), 2021 WL 1199363,
at *9 (S.D.N.Y. Mar. 30, 2021) (quoting Sikhs for Justice v.
Nath, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012)).  As a result,
"an amendment to a complaint may be denied as futile if a
defendant can show that there are no 'set of facts consistent
with the allegations in the complaint' which would entitle
plaintiff to relief."  Ho Myung Moolsan Co., 665 F. Supp. 2d at
250 (quoting Twombly, 550 U.S. at 563).  As noted previously,
the party opposing an amendment has the burden of establishing
that leave to amend would be futile.  Id.

### a. The ATPC states a claim for breach of the implied warranty of authority

Under New York law, the doctrine of implied warranty of authority provides: "a person who purports to make a contract, representation, or conveyance with a third party on behalf of another person, lacking power to bind that person, gives an implied warranty of authority to the third party and is subject to liability to the third party for damages for loss caused by breach of that warranty, including loss of the benefit expected from performance by the principal." DePetris & Bachrach, LLP v. Srour, 71 A.D.3d 460, 462, 898 N.Y.S.2d 4 (2010) (citing Restatement (Third) of Agency § 6.10 (Am. L. Inst. 2006)).

Aon-UK and NSG both argue that the ATPC fails to allege the elements necessary to prevail on such a claim. Specifically, Aon-UK and NSG argue that the ATPC fails to plausibly allege that (1) they made representations of authority to MSI, (2) they lacked authority to bind Pilkington to the terms of the Master Policy, and (3) MSI detrimentally relied on their alleged representations of authority.[4]  The Court disagrees.

---

[4] Aon-UK also argues that the ATPC fails to state a claim for breach of the implied warranty of authority because it fails to allege that the sublimits of the Master Policy would have been enforceable against Pilkington but for Aon-UK's lack of authority. (Aon-UK's Opp'n. at 11.)  Aon-UK's argument and its reliance on Broughton v. Dona, 101 A.D.2d 897, 898 (N.Y. App. 1984), is misplaced.  In the ATPC, MSI expressly argues that the sublimits of the Master Policy would have been enforceable against Pilkington if not for Aon-UK's lack of authority.  (ATPC ¶¶ 107, 110.)

Regarding the first element, the ATPC plausibly alleges that NSG and Aon-UK represented that they had authority to bind Pilkington to the terms of the Master Policy, including the 2016-2017 Windstorm Sublimit.  Aon-UK and NSG contend that the ATPC fails to allege that any such representations were made because neither Third-Party Defendant communicated directly with MSI.  Evidence of direct communication, however, is not necessary to establish a claim for breach of the implied warranty of authority.  An apparent agent's liability for false representations of authority extends to parties who the apparent agent knows "might be induced to act thereon."  Cargo Ships El Yam, Ltd. v. Stearns & Foster Co, 149 F. Supp. 754, 763 (S.D.N.Y. 1955).  Here, the ATPC plausibly alleges that both Aon-UK and NSG made representations of authority that were indirectly conveyed to MSI.  The ATPC alleges that the Third-Party Defendant's documented their authority to bind Pilkington in the Master Policy, which stated that the "Insured" under the policy included "Nippon Sheet Glass Co., Ltd. and Subsidiary and Associated Companies and Joint Ventures as declared to the Insurer," a definition that included Pilkington.  (ATPC ¶ 69.) The Master Policy also identified Pilkington's Ottawa, Illinois facility as a property insured under the Policy.  (Id. ¶ 71.) The ATPC further alleges that, as part of the Global Program, Aon-UK and NSG directly represented to MSI-J that they had the

authority to bind NSG Group companies, including Pilkington.
(Id. ¶¶ 72, 73.)  The ATPC plausibly alleges that MSI-J
communicated these representations of authority to its U.S.
affiliate, MSI, by informing it that the terms and conditions of
the U.S. Local Policy had to mirror the terms and conditions of
the Master Policy.  (Id. ¶¶ 73, 74.)  Given the structure of the
Global Program and the role the Master Policy played in setting
the terms of the Local Agreements, these factual allegations
support an inference that Aon-UK and NSG likely knew that their
representations of authority would be communicated to MSI.

    Furthermore, the ATPC also alleges that Aon-US, acting as
an agent for both Aon-UK and NSG, directly represented to MSI
that Aon-UK had the authority to bind Pilkington.  Specifically,
the ATPC notes that before instructing MSI to "proceed" with the
issuance of the 2016-2017 U.S. Local Policy, Aon-US told MSI
that it had "reconciled" MSI's quote with "instructions from
U.K." (Id. ¶ 89; Ex. 9 to ATPC, ECF No. 235-9.)  This further
supports the inference that Aon-UK and NSG, acting through Aon-
UK's agent, Aon-US, represented that they had authority to bind
Pilkington and knew that those representations would be relied
on by MSI.

    Regarding the second element, Aon-UK argues that the ATPC
fails to allege that either Aon-UK or NSG lacked authority to
bind Pilkington.  (Aon-UK's Opp'n at 8-9.)  The ATPC makes

clear, however, that the breach of warranty claim is brought in the alternative and is contingent on a "fact-finder find[ing] that Pilkington-US was not bound by the sublimits in the Master Policy as MSI-US, Pilkington-US, Aon-US and Aon-UK incorporated them in the U.S. Local Policy . . . ." (ATPC ¶ 104.) Under Rule 14 of the Federal Rules of Civil Procedure, a defendant "is permitted to join someone against whom a cause of action has not yet accrued, provided that the claim is contingent upon the success of plaintiff's action and will accrue when defendant's liability is determined in the main action or plaintiff's claim is satisfied." 6 Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedure § 1451 (3d ed. 2021). Here, MSI concedes that its breach of the implied warranty of authority claim will only accrue if a fact-finder concludes that Aon-UK and NSG lacked authority to bind Pilkington to the sublimits of the Master Policy. (ATPC ¶¶ 19, 104, 117, 123.) Because MSI is entitled to bring its claim in the alternative, it is not required at this stage to affirmatively allege facts that establish that Aon-UK and NSG lacked authority to bind Pilkington to the terms of the Master Policy.

Finally, the ATPC plausibly alleges that MSI relied on the alleged representations of authority made by NSG and Aon-UK when implementing the Global Program in the U.S. Aon-UK argues that any claim of reliance is undermined by the fact that, prior to

the Endorsement, the U.S. Local Policy contained a different windstorm sublimit than the Master Policy.  (Aon-UK's Opp'n at 12.)  Additionally, Aon-UK argues that MSI's alleged use of the Endorsement to materially alter Pilkington's Windstorm Sublimit demonstrates that MSI did not rely on representations of authority made by Aon-UK and NSG.  (Id.)  These arguments assume the truth of Pilkington's factual allegations concerning MSI's intent and are inapplicable to the Court's analysis under Rule 12(b)(6).  See Anderson News, L.L.C. v. American Media, Inc., 680 F.3d 162, 184-85 (2d Cir. 2012) ("The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion"), cert. denied, 568 U.S. 1087 (2013).

As noted previously, the ATPC plausibly alleges that Aon-UK and NSG represented that they had authority to bind Pilkington to the terms of the Master Policy and those representations were communicated both directly and indirectly to MSI.  Drawing all reasonable inferences in MSI's favor, the ATPC alleges that MSI relied on those representations when it participated in the Global Program and issued coverage to Pilkington under the 2016-2017 U.S. Local Policy.  See Allegany Cap. Enteprises, LLC v. Cox, No. 19 Civ. 160S (WMS), 2021 WL 534803, at *22 (W.D.N.Y. Feb. 12, 2021) (concluding that a plaintiff's entry into a

contract established that the plaintiff relied on representations of authority made by the defendant).

For the reasons set forth above, the ATPC sufficiently pleads the various elements necessary to sustain a claim for breach of the implied warranty of authority.

> ### b. MSI's breach of the implied warranty of authority claim can be brought in the alternative

Aon-UK and NSG next argue that MSI's claim for breach of the implied warranty of authority is futile because a judgment in favor of Pilkington in the underlying proceeding will preclude MSI from alleging that it relied on representations of authority made by Aon-UK and NSG. Specifically, both Third-Party Defendants argue that, due to the nature of Pilkington's claims, any judgment in favor of Pilkington will require the fact-finder to conclude that MSI acted fraudulently. Both NSG and Aon-UK argue that such a finding would fatally undermine MSI's claim that it relied on representations of authority concerning the Third-Party Defendants' ability to bind Pilkington to the terms of the 2016-2017 Master Policy.

In its reply to Aon-UK's Memorandum in Opposition, MSI concedes that its breach of implied warranty claim will only accrue if Pilkington prevails on one of the "non-fraud based claims that the Court has permitted to proceed, [such as Pilkington's] claim for breach of the implied covenant of good

faith and fair dealing." (MSI Reply to Aon-UK at 4, ECF 239.)
According to MSI, "[t]here would be no inconsistency between
MSI-US being held liable under one of those theories and Aon-UK
being liable for a breach of implied warranty to MSI-US." (Id.
at 4-5.) Although this specific outcome in the underlying
proceeding is arguably unlikely, it is not implausible. As a
result, the Court cannot conclude that MSI's proposed amendment
is clearly futile.

As noted previously, "Rule 14(a) permits a defending party
to implead another 'who is or may be liable to the third-party
plaintiff for all or part of the plaintiff's claim against the
third-party plaintiff.'" Bank Of India v. Trendi Sportswear,
Inc., 239 F.3d 428, 437 (2d Cir. 2000) (quoting Fed. R. Civ. P.
14(a)). "[T]he 'is or may be liable' in Rule 14(a) make it
clear that impleader is proper even though the third-party
defendant's liability is not automatically established once the
third-party plaintiff's liability to the original plaintiff has
been determined." 6 Wright & Miller et al., supra § 1446.
Although "[t]here must be . . . some showing that under the
applicable law the third party may be liable to the defendant[,]
. . . the allegations of the third-party complaint need not show
that recovery is a certainty; the complaint should be allowed to
stand if, under some construction of the facts which might be

adduced at trial, recovery would be possible."  3 Moore's
Federal Practice – Civil § 14.04 (2021).

Pilkington's Amended Complaint asserts five claims against
MSI for reformation of contract, breach of contract, declaratory
relief, breach of the implied duty of good faith and fair
dealing, and equitable estoppel.  Although Pilkington's claims
are undoubtedly based on "its assertion that MSI perpetrated a
fraud against it by means of the Endorsement," Pilkington, 2021
WL 2000371, at *13, a fact-finder is not required to conclude
that MSI acted fraudulently in order to find for Pilkington.
Because MSI could plausibly bring a breach of warranty claim
against the Third-Party Defendants if Pilkington prevails on a
theory that does not involve fraud, the proposed amendment is
not clearly futile.  See 6 Wright & Miller et al., supra § 1487
("If a proposed amendment is not clearly futile, then denial of
leave to amend is improper"); see also Malibu Media, LLC v. John
Does, 1-11, No. 12 Civ. 3810 (ER), 2013 WL 3732839, at *4
(S.D.N.Y. July 16, 2013) ("Plaintiff need only present a
plausible claim to survive a motion to dismiss, not a claim that
is reasonably likely" (internal quotation marks omitted)).

Drawing all reasonable inferences in MSI's favor, the Court
cannot assume that the outcome in the underlying proceeding will
preclude MSI from asserting the proposed breach of warranty
claim against Aon-UK and NSG.  Here, the ATPC plausibly states a

claim for breach of the implied warranty of authority in the event Pilkington prevails against MSI and a fact-finder concludes that NSG and Aon-UK did not have authority to bind Pilkington to the terms of the Master Policy.  Despite the uncertainty regarding the ultimate viability of MSI's proposed claim, MSI should have the opportunity to assert its claims against the Third-Party Defendants at this stage and proceed to discovery.  See Williams v. Citigroup Inc., 659 F.3d 208, 212 (2d Cir. 2011) (noting that permissive standard of Rule 15(a) is consistent with the Second Circuit's "'strong preference' for resolving disputes on the merits" (quoting New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005)).

### c. The Court has personal jurisdiction over NSG

Finally, the Court considers NSG's renewed arguments regarding personal jurisdiction.  NSG argues that MSI's proposed ATPC is futile because the forum selection clause of the Master Policy applies and MSI has failed to establish that the Court has personal jurisdiction over it for purposes of the breach of the implied warranty claim.  In response, MSI argues that the forum selection clause does not apply because the breach of implied warranty claim is based on representations made by NSG outside of the Master Policy.  MSI further argues that the Court

has specific personal jurisdiction over NSG and Aon-UK under an agency theory of jurisdiction.  The Court agrees with MSI.

First, NSG's arguments concerning the forum selection clause of the Master Policy are unconvincing.  Similar to the extracontractual tort claims that MSI raised in its original Third-Party Complaint, the breach of implied warranty claim included in the ATPC is not based on any right or obligation arising out of the Master Policy.  Instead, the newly asserted claim concerns representations of authority that were made both within and outside the Master Policy.  Because the breach of warranty claim is independent of the Master Policy, the forum selection clause does not apply.  Furthermore, even if the forum selection clause did apply, it would not render MSI's proposed amendment futile.  A forum selection clause cannot "deprive the disfavored forum of jurisdiction or venue, where the conditions of subject matter and <u>in personam</u> jurisdiction and proper venue are otherwise met."  <u>Licensed Prac. Nurses, Technicians & Health Care Workers of New York, Inc. v. Ulysses Cruises, Inc.</u>, 131 F. Supp. 2d 393, 409 (S.D.N.Y. 2000).  The forum selection clause of the Master Policy simply has no bearing on the Court's analysis of MSI's request for leave to amend.

NSG's argument concerning personal jurisdiction is also unavailing.  Like the original Third-Party Complaint, the ATPC alleges that (1) NSG was responsible for arranging Pilkington's

insurance coverage and, in that capacity, agreed to the Global Program with MSI-J; (2) NSG subsequently delegated authority to its agent, Aon-UK, to procure policies in furtherance of the Global Program; and (3) Aon-UK then directed its U.S. affiliate, Aon-US, to obtain policies for NSG's U.S. based companies, including Pilkington, in accordance with the Global Program. (ATPC ¶¶ 28, 31-32.)  These facts are sufficient to demonstrate that NSG received a benefit from Aon-US's New York contacts in the form of crucial assistance that ensured the successful implementation of the Global Program.  Accordingly, the Court has personal jurisdiction over NSG under an agency theory of jurisdiction.  See Quest Trading, LLC v. Com. & Indus. Ins. Co., No. 16 Civ. 735 (NRB), 2017 WL 946421, at *6 (S.D.N.Y. Feb. 15, 2017) (finding personal jurisdiction over a foreign defendant where the relevant insurance policy was procured from a New York insurer "which issued the policy (underwritten in New York) from New York").

**III.  Conclusion**

For the reasons set forth above, MSI's request for leave to amend its Third-Party Complaint (ECF No. 115) is GRANTED.  MSI is directed to file its proposed ATPC as soon practicable.  It is further ORDERED that all parties to this litigation shall participate in a telephone conference on Thursday, November 4,

2021 at 11:00 A.M.  The purpose of the telephone conference is

to set a final deadline for discovery in this proceeding.

**SO ORDERED.**

Dated:      New York, New York
            October 27, 2021

                                              John F. Keenan
                                   John F. Keenan
                            United States District Judge